Cooke, J. (dissenting).
Admittedly, the Illinois statute recently declared unconstitutional by the Supreme Court of the United States is significantly different from the New York statute (EPTL 4-1.2, subd [a], par [2]). Nevertheless, it is respectfully submitted that our statute is likewise unconstitutional in light of Trimble v Gordon (430 US 762).
In Trimble, the Supreme Court was careful to delineate the boundaries of its inquiry, thus explaining that (p 771) "The orderly disposition of property at death requires an appropriate legal framework, the structuring of which is a matter particularly within the competence of the individual States. In exercising this responsibility, a State necessarily must enact laws governing both the procedure and substance of intestate succession. Absent infringement of a constitutional right, the federal courts have no role here, and, even when constitutional violations are alleged, those courts should accord substantial deference to a State’s statutory scheme of inheritance.” The court also recognized that (p 770) "[t]he more serious problems of proving paternity might justify a more demanding standard for illegitimate children claiming under their fathers’ estates than that required either for illegitimate children claiming under their mothers’ estates or for legitimate children generally”. Nevertheless, considering the Illinois statute, the court reasoned (pp 770-771): "We think, however, that the Illinois Supreme Court gave inadequate consideration to the relation between § 12 and the State’s proper objective of assuring accuracy and efficiency in the disposition of property at death. The court failed to consider the possibility of a middle ground between the extremes of complete exclusion and case-by-case determination of paternity. For at least some significant categories of illegitimate children of intestate men, inheritance rights can be recognized *71 without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under intestacy laws. Because it excludes those categories of illegitimate children unnecessarily, § 12 is constitutionally flawed.” Furthermore, concerning the interests of the States in the accurate and efficient disposition of property, the court commented (p 772, n 14): "Evidence of paternity may take a variety of forms, some creating more significant problems of inaccuracy and inefficiency than others. The States, of course, are free to recognize these differences in fashioning their requirements of proof. Our holding today goes only to those forms of proof which do not compromise the States’ interests. This clearly would be the case, for example, where there is a prior adjudication or formal acknowledgment of paternity. Thus, we would have a different case if the state statute were carefully tailored to eliminate imprecise and unduly burdensome methods of establishing paternity.”
Applying the equal protection analysis employed by the Supreme Court in Trimble necessitates consideration of the relation of our statute to our State’s "proper objective of assuring accuracy and efficiency in the disposition of property at death” (430 US, at p 770). Of course, our statute is not mindless nor totally irrational and a concern for a solid proof of paternity is a legitimate State purpose. But if the court is now required to put teeth into its scrutiny, we are obliged to go beyond the purpose of the statute to a consideration of the rationality of the burden it places on the State’s illegitimate children.
A judicial proceeding may promote accuracy, but the difficulties in otherwise establishing paternity do not justify the narrow confines and procedure mandated by our statute. The requirement of an order of filiation made during the lifetime of the father will, ipso facto, exclude a substantial category of illegitimate children from inheritance. If this exclusion resulted from a lack of proof, it might be justifiable. But in reality not obtaining an order of filiation will often result simply from the fact that the putative father is supporting and acknowledging the children as his own. Or, it might well be and often is the product of carelessness or ignorance on the part of those who might institute a proceeding within the statutory limitation, for neither of which should a child suffer. Indeed, ordinarily the order will be obtained only where the natural father is not providing support. The children who are *72 voluntarily supported, no matter how compelling the proof, will be absolutely barred if such an order is not obtained.
The question of paternity is a delicate one. Even though the putative father may petition for the order (see Family Ct Act, § 522), this is a burdensome procedure. To require an order of filiation during the lifetime of the father is to demand, at least in the eyes of laymen, a form of adversary proceeding. The instant matter is illustrative. The natural father was supporting petitioners, and had made an acknowledgment of his parenthood as to one of them. In this instance the only purpose served by an order of filiation would be to satisfy a requirement which may have provoked disharmony and which goes beyond what is necessary in these circumstances. To be sure, the State may desire this method of proof, but this is an extreme requirement in view of the consequences. The State may impose a heavy burden, but the statutory procedure required has only a tenuous relation to the quantum of proof demanded. Viewed in proper perspective, it is apparent that the statute places an undue, if not unyielding, burden on those concerned, and thus in light of Trimble it must be concluded that the statute leaves the "middle ground” of what a State may legitimately require and settles on the side of complete exclusion.
In Trimble, the Supreme Court reasoned that a paternity order obtained for purposes of requiring the father to provide support should be sufficient to establish paternity for purposes of allowing an illegitimate child to inherit from a father who dies intestate (see 430 US, at p 772).* However, the court did not suggest that this is the only method for making this determination. Our statute considers no alternatives and imposes a sine qua non requirement that an order of filiation be obtained during the lifetime of the father (EPTL 4-1.2, subd *73 [a], par [2]). For this reason, in light of Trimble, our statute fails to pass constitutional muster.
Accordingly, if paternity is established, the petition for an accounting should be granted.
Chief Judge Breitel and Judges Jasen, Gabrielli and Wachtler concur with Judge Jones; Judge Cooke dissents and votes to reverse in a separate opinion in which Judge Fuchsberg concurs.
Upon reargument: Prior determination of this court affirming the decree of the Surrogate’s Court adhered to, with costs.

 This pronouncement by the Supreme Court warrants this observation. This court does not "reach or consider the challenge to the separate clause of our statute which requires that the paternity proceeding have been instituted 'during the pregnancy of the mother or within two years from the birth of the child’ ” because in this matter no order of filiation was made during the lifetime of the father (see p 68, n 1). Nevertheless, it is difficult to ignore the fact that under our statutory scheme a public welfare official may institute a proceeding within 10 years of the birth of the child (Family Ct Act, § 517, subd [b]) for purposes of requiring the father to provide support, and yet the order of filiation emanating from such proceeding would not allow the child to inherit from his or her father unless said proceeding was instituted within two years of the birth of the child (EPTL 4-1.2, subd [a], par [2]; see Matter of Flemm, 85 Misc 2d 855, 862).