[Williams, et al. v. Witherspoon, et al.]

# Williams, *et al. v.* Witherspoon, *et al.*

### *Bill for Partition.*

(Decided April 20, 1911.  55 South. 132.)

1. *Inheritance; Children; Statute.*—The word "children" as used in section 3754, Code 1907, means children having inheritable blood, legitimate children.

2. *Slaves; Inheritance from Slaves.*—Under section 3760, Code 1907, children of a slave mother who died in 1896, and who was of unknown paternity, were entitled to inherit from the mother, notwithstanding during slavery, they were neither legitimate nor illegitimate.

APPEAL from Montgomery City Court.

Heard before Hon. WILLIAM H. THOMAS.

Bill by Lucy Witherspoon and others, against Phoebe Williams, and others, to sell lands for division. Decree for complainants and respondents appeal. Affirmed.

W. A. GUNTER, for appellant. The word "children" as used in the statute means solely legitimate children.—*Wilkinson v. Adams,* 1 V. & B. 462; *Bell v. Phyn,* 7 Ves. 458; *Dickinson v. N. E. Ry Co.* 2 H. & C. 735; 49 Cent. Dig. sec. 1085.  Section 3760 was enacted in 1824, and the received construction of the statute was that it referred to children of free persons at the time of the birth of said children.—See cases cited under said section.  Nancy was unmarried in law, and in fact, when she married Pleasants, and she never had any children or their descendants, nor father nor mother, nor any brothers nor sisters or their descendants at the time of their death, and therefore, Pleasants was the sole heir of Nancy and his entry on the land is referable to his title, and his deed passed the fee against the complain-

[Williams, et al. v. Witherspoon, et al.]

ants and all other parties. His entry and holding was not as a life tenant, but in his individual right his title is well fortified by the statute of limitations.—*Malinda v. Gardner*, 24 Ala. 719; *Cantelou v. Doe*, 56 Ala. 519; *Washington v. Washington*, 68 Ala. 281; *Johnson v. Shepherd*, 143 Ala. 325; *Hall v. United States*, 92 U. S: 27.

WARREN S. REESE, J. WINTER THORINGTON, and ARRINGTON & HOUGHTON, for appellee. While under the old law, slaves could not hold or dispose of property, yet the decisions of our courts show that many of them did hold and dispose of property.—*Shanklin v. Johnson*, 9 Ala. 271; *Jones v. Shadduck*, 41 Ala. 262. Property held by a slave passed to the slave's children upon the death of the slave unless the master interposes a claim. *Johnson v. Shepherd*, 143 Ala. 325. Slavery had long passed when the property was acquired by the mother and at a time when she and her children had been endowed with all the rights and privileges of free citizens. The reason for the rule having passed, the rule should no longer be given operation, and the children inherited from their mother.—*Johnson v. Shepherd, supra; Butler v. Elyton L. Co.*, 84 Ala. 384; *Williams v. Kimball*, 26 L. R. A. 746. Under the facts in this case, the statute of limitations did not begin to run against complainants until after the death of Pleasant Johnson.—Sec. 4382, Code 1907; 74 Ala. 181; 83 Ala. 484; 87 Ala. 589; 89 Ala. 238; 96 Ala. 166; 121 Ala. 78; 128 Ala. 389; 143 Ala. 655.

SAYRE, J.—Appellees filed their bill on the equity side of the court below for a sale of land for division, claiming as children and heirs of Nancy Johnson deceased. They were the children of Nancy, to speak ac-

[Williams, et al. v. Witherspoon, et al.].

cording to nature, though born slaves and of unknown paternity. After their birth, and while she was yet a slave, Nancy entered into a customary slave marriage with Johnson, under whom the defendants claimed, and thereafter continued to live with him as his wife until her death in 1896. No children were born of this marriage. In 1878 she acquired the property in suit. The question, then, is whether complainants inherited the property by virtue of section 3760 of the Code, which, with some differences not important in this connection, has been the law of this state since the year 1824, and which provides that: "Every illegitimate child is considered as the heir of his mother, and inherits her estate in whole or in part, as the case may be, in like manner as if born in lawful wedlock."

It is settled law that, when the word "children" is used in a statute, it means "legitimate children," unless the context broadens its meaning. 5 Am. & Eng. Encyc., p. 1095, note. It is to be conceded, therefore, that the general statute of descents and distribution (section 3754 of the Code) does not avail the complainants, and that, apart from the section which we have quoted, complainants have no heritable blood, and that they can take nothing by virtue of the ordinance of November 30, 1867, or the act extending it, approved December 31, 1868.—*Smith v. State*, 9 Ala. 990; *Malinda v. Gardner*, 24 Ala. 719; Acts 1868, pp. 175, 527; *Washington v. Washington*, 69 Ala. 281; *Johnson v. Shepherd*, 143 Ala. 325, 39 South. 223. The point of the decisions in those cases was that emancipation did not make a slave father's children his children within the meaning of the statute of descents and distribution, for that it did not remove the obstacle in the way of their inheritance from the father, to wit, that they were not born of a contract-

marriage. That obstacle stood in their way after eman-
cipation as well as before.

But this record presents a different question. It is
whether the complainants come within the beneficial in-
fluence of section 3760, the purpose and effect of which
is to broaden the meaning of section 3754 in certain
cases. It is not to be doubted that as long as the insti-
tution of slavery prevailed in this state this section
operated in favor of free men only. But the exception,
which excluded bastards born of slave parents from the
beneficial effect of section 3760, was not to be found in
the language of the statute itself, for that language was
and is general, but it existed by virtue of another law
based upon the necessities of the institution which were
such as to deny to all slaves the right either to acquire
or transmit property by inheritance or otherwise. In
1 Bish. Mar. & Div. § 163b, the author states his opin-
ion that during slavery the status of bastardy was as
foreign to the children of slave marriages, or quasi mar-
riages, as the status of legitimacy. He says: "If a slave
was not the legitimate offspring of his parents who were
living together in the way of marriage, still he was not
a bastard. He had no foul or corrupt blood. The sim-
ple fact was that he had no status, as to this particular,
the one way or the other. Legitimate, or illegitimate, was
a thing having no relation whatever to his condition as
a slave." And the effect of what is said for appellants,
defendants in the court below, is that since complain-
ants were not bastards as long as they were slaves, and
no enabling statute has been enacted for their specific
benefit, they are still neither legitimate nor illegitimate,
and that the statute cannot be made to reach their case
except by judicial amendment. This argument has been
used in at least one case to exclude the offspring of a
so-called customary slave marriage from the benefit of

a statute similar to section 3760 of our Code with this placebo: That the children of slaves will. not by the courts be reduced to the degrading status of bastardy, though the Legislature might appropriately move to their relief without resorting to the use of an offensive term.—*Adams v. Sneed*, 41 Fla. 151, 25 South. 893. But the argument seems to be influenced more by good manners than by a just appreciation of the legal terms employed. The term ought to carry no reproach for these complainants or others in similar cases, because the conditions out of which the fact inevitable arose were imposed upon them by circumstances over which they had no control. Every slave was nevertheless a bastard—. a natural child. By the common law the only temporal consequence of illegitimacy was that the bastard could not inherit from his parents or any one else. That was also one of the consequences of slavery. The statute in question deals with illegitimate birth as it affects property rights. Its object is not to redeem the conventional social status of illegitimates, but to endow them with heritable blood on the part of the mother as a partial measure of justice. The heritable blood of the common law could flow only out of the civil contract of marriage between man and wife. The heritable blood of an illegitimate flows from the veins of the mother alone. The statute in favor of illegitimates, like the general statute of descents and distribution, follows the lead of the natural affections, and seeks to make such provision as the mother would probably make. To paraphrase a sentence to be found in *Garland v. Harrison*, 8 Leigh (Va.) 368: It ought, therefore, to be at all times liberally construed in favor of those to whom the intestate herself, had she made a. will, might be supposed to be most favorable, without reference to common-law rules or feudal disabilities; and this is our safest guide

[Williams, et al. v. Witherspoon, et al.]

in its construction, and entitled to more consideration than any other. Emancipation was not retroactive. It did not legitimize those who had been born slaves. And no doubt a wholesale legitimation by the ordinance and act of 1868 under the circumstances of doubt which so frequently affected the question of slave paternity was considered impracticable at that time. Of late, however, an effort in that direction has been made. Code, § 3766. To say during the prevalence of slavery that the children of slave marriages were neither legitimate nor illegitimate meant only that according to the moral law they were not stigmatized; according to the municipal law they had not the rights of persons. The courts have regard for moral questions, but their specific business and duty is to administer municipal law. Looking to that law for a definition of our terms, we do not doubt that complainants were the bastard children of Nancy Johnson at the time of her death, and entitled to take from her under section 3760 of the Code. We have referred to the long standing of this statute. That, however, is not important. Enough that it was the law at the time of Nancy's death, since the status of complainants and their rights became fixed at that time. Emancipation having removed the only barrier which at any time stood between them and their enjoyment of the rights of persons, they now inherit in like manner as others of their class. They are within both the letter and the equity of the statute made for the relief of those born outside of legalized wedlock, for such they have always been, though once excluded from every inheritance upon other considerations. The judge below so held, and his decree will be affirmed.

Affirmed.

SIMPSON, ANDERSON and SOMERVILLE, JJ., concur.