372 So.2d 829 (1979)
Phyllis EVERAGE
v.
Mattie Lee GIBSON et al.
77-656.
Supreme Court of Alabama.
June 1, 1979.
Rehearing Denied July 6, 1979.
*830 Judy W. Hammond and William M. Hammond, Troy, for appellant.
Robert W. Barr of Gibson & Barr, Troy, for appellees Willie Anne Golden, Billy Lamar Gibson and for Wayne Gibson and Billy Lamar Gibson as guardians of Thomas Marshall Gibson.
Thad Yancey, Jr., of Cervera & Yancey, Troy, Guardian ad Litem for Thomas Marshall Gibson, appellee.
Keith Watkins, Troy, for appellee, Troy Bank & Trust Co.
BLOODWORTH, Justice.
Intervenor Phyllis Everage appeals from judgment that she has no interest in the real estate of Paul Lamar Gibson, deceased, and is not entitled to any proceeds from the sale of the lands for division. We affirm.
Paul Lamar Gibson died intestate on June 18, 1972, survived by his widow, Mattie Lee Gibson, and four children, William Paul Gibson, Willie Anne Gibson Golden, Billy Lamar Gibson, and Thomas Marshall Gibson. Appellant Phyllis Everage, born March 23, 1932, also claims to be the daughter and eldest child of Paul Lamar Gibson, deceased.
On June 28, 1977, Mattie Lee Gibson and Billy Lamar Gibson filed a complaint to sell land for division, naming as defendants the other three Gibson children. The real estate sought to be sold included 507 acres owned by Paul Lamar Gibson at his death. J. P. Lester Sawmill, Inc., intervened, claiming an interest in the timber on the land. A sale was ordered upon a stipulation of the parties. After confirmation of the sale, but before distribution of the proceeds, Phyllis Everage intervened, alleging that *831 she was an illegitimate daughter of Paul Lamar Gibson, deceased, and claiming a child's share of the real and personal property of the decedent. Ms. Everage subsequently filed a motion to vacate the judgment of sale because she, as a joint owner of the lands, was an indispensable party and had not been joined in the suit.
The evidence was in conflict on the issue of Ms. Everage's relationship to the decedent. After a hearing ore tenus, the trial judge ruled that she had no interest in the real estate of Paul Lamar Gibson, deceased. The judgment reads, in pertinent part, as follows:
"The rules of property pertaining to descent of property by illegitimate children has been settled by judicial decision and legislative enactment in Alabama since 1824. People have entered into transactions upon reliance of those settled rules of property. The law of Alabama and rights of Phyllis Everage to the subject property became fixed with the death of Paul Lamar Gibson.
"Whether Trimble v. Gordon is apt authority is not decided. Retroactive application of the rule of Trimble to the status between the parties would have a detrimental effect on the administration of justice and property rights in Alabama. The court adheres to those settled decisions of Alabama pertaining to descent of property by illegitimate children and leaves corrective measures, if any, to the legislature.
"IT IS, THEREFORE, ORDERED AND ADJUDGED BY THE COURT AS FOLLOWS:
"1. That Phyllis Everage does not have any interest in the real estate of Paul Lamar Gibson and is not entitled to any proceeds of the sale of lands for division among joint owners held April 14, 1978, and her claims for relief in the original and amended complaint, separately and severally, are denied.
"2. That Phyllis Everage is not entitled to vacate the judgment of sale and order of confirmation. Motion to vacate is denied."
The issue on this appeal, raised at trial by amendment to appellant's intervention complaint, is whether the system relating to intestate succession in Alabama[1] violates equal protection of the law guaranteed by the fourteenth amendment to the United States Constitution and §§ 1 and 35 of the Alabama Constitution, by invidiously discriminating on the basis of illegitimacy.[2] We find no equal protection violation with respect to either the United States or Alabama Constitutions.
At the outset, we note that the trial court made no finding that appellant was or was not biologically related to Paul Lamar Gibson, deceased. The appellees argue that a finding that she is not the decedent's daughter should be presumed from the judgment, and that she therefore may not attack the constitutionality of the statutes of descent and distribution on this appeal because of lack of "standing."
Our rule is that, where the trial judge does not make express findings of fact, this Court will assume that he found facts necessary to support his judgment, unless the finding would be clearly erroneous and against the great weight and preponderance of the evidence. Lipscomb v. Tucker, 294 Ala. 246, 314 So.2d 840 (1975). It is apparent from the wording of the judgment quoted above that a finding that appellant was not biologically related to the decedent is unnecessary to support the result reached. We need not presume that the trial judge made such a finding, and, therefore, appellant is not precluded on this ground from asserting her constitutional argument because of lack of "standing."[3]
*832 Appellant contends, on this appeal, that our review of this case is controlled by Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). We disagree. To the contrary, we find that our statutory system is more akin to the New York statute held constitutional in Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978).
In Trimble, the United States Supreme Court declared unconstitutional an Illinois statute which provided that an illegitimate child could inherit from his mother, but could inherit from his father by intestate succession only if the child's parents married and the father acknowledged the child as his own. The father in Trimble had neither married the mother nor acknowledged the child as his daughter, but he had been found to be her father in a paternity suit. The Illinois courts nevertheless excluded the child as a distributee of her father's estate, based upon the statute. The United States Supreme Court reversed, holding that the statute discriminated against illegitimate children in violation of the equal protection clause of the fourteenth amendment. The classification was found not to be substantially related to a permissible state interest. Because the statute unnecessarily restricted its operation to circumstances where both acknowledgment and marriage of the parents existed, it was constitutionally flawed and ignored "some significant categories of illegitimate children of intestate men [whose] inheritance rights can be recognized without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under intestacy laws." 430 U.S. at 771, 97 S.Ct. at 1465, 52 L.Ed.2d at 40.
Subsequently, in Lalli, the Court concluded that a New York intestate succession statute did not violate the equal protection clause of the fourteenth amendment. That statute provides that an illegitimate child may not inherit from his father unless the paternity of the father is declared by a court during the father's lifetime.[4] The procedural requirements placed on illegitimate children by this statute were found to bear a reasonable relationship to the substantial state interest of providing for the just and orderly disposition of intestate property.
As Mr. Justice Powell, writing the plurality decision for the Court in Lalli, so clearly points out, "The primary state goal underlying the challenged aspects of § 4-1.2 is to provide for the just and orderly disposition of property at death. We long have recognized that this is an area with which the States have an interest of considerable magnitude." He continues, "This interest is directly implicated in paternal inheritance by illegitimate children because of the peculiar problems of proof that are involved. Establishing maternity is seldom difficult." On the other hand, "[p]roof of paternity, by contrast, frequently is difficult when the father is not part of the formal family unit. `The putative father often goes his way unconscious of the birth of a child. Even if conscious, he is very often totally unconcerned because of the absence of any ties to the mother. Indeed the mother may not know who is responsible for her pregnancy.'" Mr. Justice Powell alludes to the difficulties of serving an illegitimate with process in the course of probating a will and poses this query from the New York case of In re Flemm, 85 Misc.2d 855, 859, 381 N.Y.S.2d 573, 575-76 (Sur.Ct.1975): "`How does one cite and serve an illegitimate of whose existence neither family nor personal representative may be aware?'" Moreover, "`And of greatest concern, how [to] achieve finality of decree in any estate when there always exists the possibility however remote of a secret illegitimate lurking in the buried past of a parent or an ancestor of a class of beneficiaries?'" Mr. Justice Powell points out that the accurate resolution of claims to paternity is enhanced "by placing paternity disputes in a judicial forum during the lifetime of the father." Requiring the order to *833 be issued during the father's lifetime, he suggests, "permits a man to defend his reputation against `unjust accusations in paternity claims,'" and, therefore, "[f]raudulent assertions of paternity will be much less likely to succeed ...." Lalli, supra, 439 U.S. at 268-271, 99 S.Ct. at 524-26, 58 L.Ed.2d at 511-13.
The provisions setting out the order of intestate succession to real estate in Alabama are found in Code 1975, § 43-3-1. Real estate descends first to the children of the intestate, or their descendants. "Children," as used in this statute, has been held to mean legitimate children. Williams v. Witherspoon, 171 Ala. 559, 55 So. 132 (1911). Section 43-3-7 provides that every illegitimate child is considered to be the heir of his mother. The effect of this section is to make an illegitimate child the "heir of his mother as if he were born in lawful wedlock; that is, fully legitimates him for the purpose of heirship and succession." Foster v. Lee, 172 Ala. 32, 55 So. 125 (1911).
We have concluded that there are three situations in Alabama in which a child born out of wedlock may inherit from his intestate father, short of having been adopted by the father. In the first, the child is "legitimated" by the marriage of the parents and recognition of the child by the father as his own. Code 1975, § 26-11-1. Recognition must be unambiguous and clear in its character. Howard v. Pike, 290 Ala. 213, 275 So.2d 645 (1973).
In the second, the child is "legitimated" by the father's written declaration, attested by two witnesses, which is filed in the office of the probate judge. Code 1975, § 26-11-2.
The third situation is a "judicial determination of paternity." Code 1975, §§ 26-12-1 et seq. Although the statutory scheme subsumes the use of the state to prosecute the action with the putative father as defendant,[5] the proceeding itself is civil in nature, and the measure of proof to establish paternity is identical to that in other civil cases. Keener v. State, 347 So.2d 398 (Ala.1977). The basic purpose of the paternity statute is to judicially determine the paternity of an illegitimate child. State ex rel. Moore v. Strickland, 289 Ala. 488, 268 So.2d 766 (1972). Once paternity is determined, the defendant is considered "to be the father of such child and thenceforth shall be subject to all obligations for the care, maintenance and education of such child [the same as] the father of a legitimate child of like age and capacity." Code 1975, § 26-12-4.
Although Alabama case law has not previously recognized that the child is "legitimated" by this proceeding, we find that the judgment of paternity serves the same state purpose as "legitimation" in establishing the right to intestate succession. Thus, the statement by this Court in Moore v. Terry, 220 Ala. 47, 124 So. 80 (1929), that a "bastard who is not legitimated may only of course inherit from his mother or her descendants, even though his paternity is satisfactorily shown," is too broad and is expressly disapproved.
We hold that the adjudication of paternity in a proceeding under § 26-12-1 et seq. is sufficient state expression by which to obtain the legitimation of an illegitimate child in order that it may inherit from the intestate father's estate in the same manner as a legitimate child.
Even in Trimble, the United States Supreme Court recognized that
"... Sherman Gordon was found to be the father of Deta Mona in a state court paternity action prior to his death. On the strength of that finding, he was ordered to contribute to the support of his child. That adjudication should be equally sufficient to establish Deta Mona's right to claim a child's share of Gordon's estate, for the State's interest in the accurate and efficient disposition of property at death would not be compromised in any way by allowing her claim *834 in these circumstances...." [Emphasis supplied.]
430 U.S. at 772, 97 S.Ct. at 1466, 52 L.Ed.2d at 40-41.
Thus, we find that Alabama's statutory system regarding illegitimate children and intestacy bears a substantial relation to the purpose of the entire statutory system governing descents and distribution. That purpose is to provide for the orderly and certain distribution of an intestate's property with as little delay as is compatible with a just determination of the extent of property to be distributed, the rights of those who are to receive the property, and the claims of others to the estate. Long ago we abandoned as one of the purposes of this system the common law basis for excluding illegitimates from inheritance, which is to discourage illicit sexual intercourse. Butler v. Elyton Land Co., 84 Ala. 384, 4 So. 675 (1888).
Our statutes seek to avoid the uncertainty and potential for fraud inherent in permitting a person to claim paternity on the part of the intestate after the purported father has died and, in many instances, decades after the alleged child's birth.
To summarize, in order to claim the right to inherit from the intestate father's estate, a child born out of wedlock may prove legitimation by the marriage of his parents plus a clear and unambiguous recognition of the child by the father. Or, such child may introduce a written, attested, and filed declaration of legitimation. Finally, the child may show a judicial determination of paternity made within two years of birth and during the father's lifetime.
We believe such a system as we have delineated adequately deals with the "peculiar problems of proof" encountered in establishing paternity and works "to ensure the accurate resolution of claims of paternity and to minimize the potential for disruption of estate administration," as pronounced in the latest United States Supreme Court decision in Lalli, supra, 439 U.S. at 271, 99 S.Ct. at 526, 58 L.Ed.2d at 513.
In the instant cause, the record discloses no proof of either of the first two alternatives, although both were viable subsisting legal methods of obtaining "legitimation" during the intestate's lifetime. There was no proof of a judicial determination of paternity obtained during the intestate's lifetime. The only proof offered was an attempt to show "recognition" by the intestate.
There remains for consideration the applicability of the judicial declaration which we make today that a judicial determination of paternity under Code 1975, § 26-12-1, et seq., passes constitutional muster against the claim made under the "equal protection" clause and is in accord with the most recent pronouncements of the United States Supreme Court in the decisions of Trimble and Lalli, supra. Since appellant offered no proof of a judicial determination of paternity (under the then subsisting "bastardy statutes," i. e., Tit. 6, Code of Alabama 1940, in large measure correlative to our present § 26-12-1, et seq.), the issue as to whether she can claim the benefit of our declaration today of the third alternative is not before us.
For the foregoing reasons, this cause must be affirmed. The motion to dismiss the appeal filed by some of the appellees who were purchasers at the sale for division is overruled.
MOTION TO DISMISS APPEAL OVERRULED.
AFFIRMED.
TORBERT, C. J., and MADDOX, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
FAULKNER and JONES, JJ., dissent.
JONES, Justice (dissenting):
I respectfully dissent. This is a curious very curiousopinion. The anomaly lies not so much in its essential holding (i. e., its interpretation of the determination of paternity proceeding statute, § 26-12-1, et seq., to comport to constitutional standards), *835 but in its application of this new interpretation so as to have binding effect upon this Appellant. On the one hand, the opinion is laudatory in rendering a previously unconstitutional statutory scheme of intestate succession as applied to illegitimates into a constitutionally acceptable scheme through its inclusion of a third rationally related method of legitimation for intestacy succession purposes. Then, in my view, the opinion itself makes an unconstitutional application of this new interpretation by declaring the paternity statute, as now interpreted, was available to this Appellant; and, having not availed herself of these proceedings, she loses.
Let me explain. There is no debate that, at all times pertinent to this case (indeed, from the inception of our State to the date of release of this opinion), a bastard child could be legitimated for purposes of inheriting from his or her intestate father by only two methods. Nothing is more settled in our law than 1) legitimation by marriage of the child's parents and recognition of the child by the father (§ 26-11-1), and 2) legitimation by written declaration of father (§ 26-11-2), are exhaustive of the available procedures. The cases are too legion to bear citation, but the language from Bagwell v. Powell, 267 Ala. 19, 99 So.2d 195 (1957), is illustrative:
"... There are only two procedures which serve to legitimate a bastard and make him capable of inheriting from his father. They are section 10, Title 27, Code, by the putative father marrying the mother and recognizing his paternity of the child; and pursuing the course provided for in section 11, Title 27, supra. Lingen v. Lingen, 45 Ala. 410."
See, also, Moore v. Terry, 220 Ala. 47, 124 So. 80 (1929).
That § 26-12-1, et seq., the determination of paternity proceedings (i. e., until today), were intended, so interpreted and utilized solely as a procedure for adjudicating the reputed father's obligation for the support for dependent children is equally clear:
1) It is not included within Chapter 11 of the Code dealing with legitimation;
2) The only reference in these sections to "legitimate" is in the context of the reputed father's obligations for the care, maintenance and education as being "the same which are or shall be imposed by law upon the father of a legitimate child"; and
3) An action under these Code provisions is brought in the name of the State, prosecuted by the District Attorney, and "said to be quasi-criminal in character." (Hunter v. State, 293 Ala. 226, 301 So.2d 541 (1974)).
It is not my point that this Court should not now alter its interpretation of the paternity proceedings statutes to come within the guidelines of our State and Federal constitutionally mandated equal protection guarantees. Indeed, this Court is faced with one of two choices, either of which is a viable alternative:
1) Declare our present statutory scheme unconstitutional and leave any corrective action to the legislature; or
2) Construe our paternity statutes as a third method of legitimation.
I join the other members of the Court in opting for the latter choice. (Although not entirely analogous, the reading of the Miller standards into our pornography statute is a closely related example of this type of case law interpretation to render valid an otherwise unconstitutional statute. Pierce v. State, 292 Ala. 473, 269 So.2d 218 (1974).
I should say in passing, however, that I would permit the action to be instituted by the child, or parties on behalf of the child other than the District Attorney, eliminate the "two years after birth of child" requirement, and retain the "during lifetime of the father" requirement.
My point of difference, then, though crucial to the outcome of this case, is a narrow one. I dramatize this difference by posing the question: How can a statute, altered and thus rendered constitutional by this Court's interpretation as of the date of this opinion, be held applicable to this Appellant so as to deny her relief for her earlier noncompliance?
*836 The answer must begin with the source of the problem. The pertinent intestacy statutes are § 43-3-1, Ala.Code 1975, which in pertinent part, reads:
The real estate of persons dying intestate, as to such estate descends ....
(1) To the children of the intestate....
and § 43-3-7, which states:
Every illegitimate child is considered as the heir of its mother, and inherits her estate in whole or in part, as the case may be, in like manner as if born in lawful wedlock.
The word "children" in § 43-3-1 is interpreted to mean "legitimate children." Williams v. Witherspoon, 171 Ala. 559, 55 So. 132 (1911); see, also, Hunt v. United States Steel Corp., 274 Ala. 328, 148 So.2d 618 (1963). Therefore, while illegitimate children of female intestates are provided for, illegitimate, unlike legitimate, children of male intestates are denied inheritance rights under our statutory scheme.
At this point we are clearly within the equal protection prohibition of Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). Our statutory scheme for intestacy successionpermitting a legitimate but not illegitimate child to inherit from his intestate fatherresults in invidious discrimination on the basis of illegitimacy. This does not mean, however, that the States are not allowed considerable latitude in regulating the standard of proof required of illegitimate children who would inherit from their fathers by intestate succession.
This is the precise issue addressed by the United States Supreme Court in Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978). Lalli addressed the equal protection challenge to a New York statute (§ 4-1.2 of New York's Estates, Powers, and Trusts Law), which permits an illegitimate child to inherit "... from his father if a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring paternity ...." (The statute also provides that the "proceeding [be] instituted during the pregnancy of the mother or within two years from the birth of the child." This latter requirement was not included in Appellant's grounds of constitutional attack, and thus not addressed by the Lalli Court (see footnote 5, 439 U.S. 267, 99 S.Ct. 524, 58 L.Ed.2d 510).)
Lalli compared the Illinois statute invalidated in Trimble with the validated portion of the New York statute:
"The Illinois statute in Trimble was constitutionally unacceptable because it effected a total statutory disinheritance of children born out of wedlock who were not legitimated by the subsequent marriage of their parents. The reach of the statute was far in excess of its justifiable purposes. Section 4-1.2 does not share this defect. Inheritance is barred only where there has been a failure to secure evidence of paternity during the father's lifetime in the manner prescribed by the State. This is not a requirement that inevitably disqualifies an unnecessarily large number of children born out of wedlock." Lalli 439 U.S. at p. 273, 99 S.Ct. at p. 527, 58 L.Ed.2d at p. 514.
Lalli, in answering affirmatively the question, "whether the discrete procedural demands that § 4-1.2 [to the extent challenged] places on illegitimate children bear an evident and substantial relation to the particular state interests this statute is designed to serve", observed:
"The primary state goal underlying the challenged aspects of § 4-1.2 is to provide for the just and orderly disposition of property at death."
In the instant case, the trial Court correctly acknowledged the unconstitutionality of our intestate succession statute, but denied Appellant relief, concluding that Trimble should not be applied retroactively. (Appellant's reputed father died before Trimble.)
On appeal, this Court proceeds on the same initial premise of invalidity of our succession statutes and the inadequacy of our two traditionally recognized legitimization procedures. Then, its opinion takes our determination of paternity procedure statutes *837 (in some respects similar to New York's Lalli statute) and purports to engraft constitutional standards thereon. Finally, concluding that the record supports this Appellant's noncompliance with these standards (i. e., the record shows no offer of proof of an adjudication of paternity under § 26-12-1, et seq.), the opinion affirms the trial Court's rejection of Appellant's claim.
I reemphasize that my dissent does not concern itself with the engrafting of valid guidelines on an otherwise unconstitutional statute, even to the extent of broadening the statute's historic purpose. This approach, in my opinion, is entirely proper in light of Trimble and Lalli, and because of the equal protection mandate of our State Constitution.
My point of disagreement is two-fold:
1) The standards engrafted into § 26-12-1 fall short of the equal protection guarantees of both the State and United States Constitutions. While abstract "fairness" of a State law is not the focus of equal protection scrutiny, the statute's relation to the State interests it is intended to promote should not be so tenuous as to lack the rationality contemplated by the equal protection mandate of our Constitutions, State and Federal. In my opinion, the "within two years of the birth of the child" requirement does not meet the latter test. Likewise, the restrictions that the proceedings be instituted in the name of the State and prosecuted by the District Attorney serve no legitimate (no pun intended) State interest. In contrast, the "within the lifetime of the father" requirement is directly and rationally related to the proof of legitimacy as it in turn relates to the orderly procedure for the disposition of intestate estates; and
2) My second point of disagreement, though perhaps of lesser importance in the total development of this area of the law, is of even greater importance than the first point as it relates to the application and disposition of the instant appeal. I came away from our Court's original discussions of this case recognizing my inability to articulate the reasons for my disagreement with the ultimate holding of the opinion to affirm the judgment of the trial Court. Apparently, I left the erroneous impression that I felt the judgment appealed from should be reversed in order to allow Appellant further opportunity to prove an adjudication of paternity as provided under § 26-12-1, et seq. Because of this misunderstanding, I am constrained to "go at it" another way.
It is inescapable it seems to me, that this opinion's affirmance of the trial Court's rejection of Appellant's claim is based necessarily on one of two theories:
1) Either this Court is saying that inherent in our paternity statute from its inception (the old Bastardy Act codified in Tit. 27, Chapter 2A, Code of Alabama 1940 (Recomp.1958); and Tit. 6, Code of Alabama 1940) is this third method of proof of legitimacy for intestate succession purposes, and this Appellant loses because of her noncompliance therewith (coupled with lack of proof of compliance with either of the other two); or
2) Acknowledging the statute's original constitutional infirmity, we now engraft constitutional standards into the statute and hold them applicable to this Appellant. Having failed to show compliance with these standards, as of this date engrafted into the statutory scheme, she loses.
Although the opinion itself gives no express hint as to which of these optional theories its affirmance is based upon, I suggest that option number 1 should be dismissed summarily. Indeed, I included this option because it is the only possible basis for affirmance other than the theory contained in option number 2. For the opinion to even imply (or for others to infer from the opinion) that our paternity statute, or its ancestry, has ever been considered as having any purpose beyond its "dependency" scope would be nothing short of impugning the integrity of this Court. No one in his right mind would do this, much less the Court itself.
So, we turn to option number 2. Necessarily, then, the Court is saying this Appellant should have anticipated that sometime *838 in the future this determination of paternity proceeding would be judicially enlarged to include within its scope and purpose the means of proof of legitimacy for purposes of intestacy succession. Stated another way, the burden was upon her not to rely upon prior judicial interpretation of the legitimation statutes (§§ 26-11-1, 2); and she bore the burden of not anticipating that this Court, given the appropriate circumstances, would not construe this determination of the paternity statute in such manner as to broaden its scope and purpose to permit illegitimates to inherit if proof of paternity were established in accordance with this statute. (The opinion cites no authority for such an ex post facto application for this broadened standard of proof to the present case; and I suggest for good reason there isn't any.)
The difficulty is intensified because, unlike the challenged New York statute in Lalli, our paternity statute is not an inheritance statute. Section 4-1.2(2) of the New York Code begins with the language, "An illegitimate child is the legitimate child of his father so that he and his issue inherit from his father if a court of competent jurisdiction has ...." That this New York statute, if constitutionally sound, had binding effect upon the illegitimate claimant in Lalli is unquestioned.
Here, our paternity statute, before the date of this opinion, had no application to intestate succession because it is not an inheritance statute. It does not by its terms, nor by judicial construction, legitimate illegitimate children, nor does it permit illegitimate children to inherit from their fathers. Nonetheless, acknowledging the posture of our present law, this opinion 1) rectifies the old "children" means "legitimate children" status of our inheritance statute; 2) broadens the determination of paternity statute to provide what it perceives as a constitutionally valid standard of proof as a condition precedent to an illegitimate's right of intestacy succession to the father's estate; and 3) affirms the trial Court's denial of Appellant's claim because of her noncompliance with this newly-fashioned standard of proof.
I summarize my dissent:
1) Section 26-12-1, et seq. (which is left intact by this Court's opinion as to each of its essential elements), is overly restrictive to the exclusion of significant numbers of illegitimates, which restrictions bear no rational relation to the State's legitimate interests served thereby; and
2) A standard of proof of paternity for purposes of meeting the definition of "child" cannot be fashioned as of the date of this decision and at the same time hold this claimant to the burden of prior compliance with such standards.
I would modify the paternity statute (as it relates to the specific burden of proof in issue) by eliminating the "two years after birth," the "instituted in the name of the State," and the "prosecuted by the district attorney" requirements. This would mean that an illegitimate child could inherit from his father and mother to the same extent and to the same degree as a legitimate child if 1) its illegitimate status were changed to that of a legitimate child by virtue of compliance with §§ 26-11-1, 2; or 2) if a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring the claimant's paternity. (I would, of course, leave this statute unaltered with respect to its utilization for traditional purposes of dependency (i. e., for adjudication of paternity for purposes of the reputed father's obligation for the care, maintenance, and education of the child).)
I would then apply this holding prospectively; that is, I would apply the requirement of this standard of proof to all cases in which the reputed father's death occurred subsequent to the date of this opinion; and I would reverse the instant judgment and remand this case for a further hearing on the issue of paternity.
FAULKNER, J., concurs.
NOTES
[1] The statutes in question are Code 1975, §§ 26-11-1, 26-11-2, 26-12-1 to -9, 43-3-1, and 43-3-7.
[2] Although appellant contended at trial that the statutory system also invidiously discriminates on the basis of sex, this contention has not been renewed on appeal.
[3] Thus, there is no issue here of "standing" as there was in Coleman v. Sparkman, 377 So.2d 977 (Ala.1979).
[4] The New York statute required that such action be brought within two years of the birth of the child, just as Alabama requires. See Note 5.
[5] This action must be commenced within two years of the birth of the child. Code 1975, § 26-12-7. The constitutionality of this limitation is not questioned on this appeal, nor was it an issue in Lalli. See 439 U.S. at 267 n.5, 99 S.Ct. at 524 n.5, 58 L.Ed.2d at 510 n.5.