I respectfully dissent. This is a curious — very curious — opinion. The anomaly lies not so much in its essential holding (i.e., its interpretation of the determination of paternity proceeding statute, § 26-12-1, et seq., to comport to constitutional standards), *Page 835 
but in its application of this new interpretation so as to have binding effect upon this Appellant. On the one hand, the opinion is laudatory in rendering a previously unconstitutional statutory scheme of intestate succession as applied to illegitimates into a constitutionally acceptable scheme through its inclusion of a third rationally related method of legitimation for intestacy succession purposes. Then, in my view, the opinion itself makes an unconstitutional application of this new interpretation by declaring the paternity statute, as now interpreted, was available to this Appellant; and, having not availed herself of these proceedings, she loses.
Let me explain. There is no debate that, at all times pertinent to this case (indeed, from the inception of our State to the date of release of this opinion), a bastard child could be legitimated for purposes of inheriting from his or her intestate father by only two methods. Nothing is more settled in our law than 1) legitimation by marriage of the child's parents and recognition of the child by the father (§ 26-11-1), and 2) legitimation by written declaration of father (§26-11-2), are exhaustive of the available procedures. The cases are too legion to bear citation, but the language from Bagwellv. Powell, 267 Ala. 19, 99 So.2d 195 (1957), is illustrative:
 ". . . There are only two procedures which serve to legitimate a bastard and make him capable of inheriting from his father. They are section 10, Title 27, Code, by the putative father marrying the mother and recognizing his paternity of the child; and pursuing the course provided for in section 11, Title 27, supra. Lingen v. Lingen, 45 Ala. 410."
See, also, Moore v. Terry, 220 Ala. 47, 124 So. 80 (1929).
That § 26-12-1, et seq., the determination of paternity proceedings (i.e., until today), were intended, so interpreted and utilized solely as a procedure for adjudicating the reputed father's obligation for the support for dependent children is equally clear:
1) It is not included within Chapter 11 of the Code dealing with legitimation;
2) The only reference in these sections to "legitimate" is in the context of the reputed father's obligations for the care, maintenance and education as being "the same which are or shall be imposed by law upon the father of a legitimate child"; and
3) An action under these Code provisions is brought in the name of the State, prosecuted by the District Attorney, and "said to be quasi-criminal in character." (Hunter v. State,293 Ala. 226, 301 So.2d 541 (1974)).
It is not my point that this Court should not now alter its interpretation of the paternity proceedings statutes to come within the guidelines of our State and Federal constitutionally mandated equal protection guarantees. Indeed, this Court is faced with one of two choices, either of which is a viable alternative:
1) Declare our present statutory scheme unconstitutional and leave any corrective action to the legislature; or
2) Construe our paternity statutes as a third method of legitimation.
I join the other members of the Court in opting for the latter choice. (Although not entirely analogous, the reading of the Miller standards into our pornography statute is a closely related example of this type of case law interpretation to render valid an otherwise unconstitutional statute. Pierce v.State, 292 Ala. 473, 269 So.2d 218 (1974).
I should say in passing, however, that I would permit the action to be instituted by the child, or parties on behalf of the child other than the District Attorney, eliminate the "two years after birth of child" requirement, and retain the "during lifetime of the father" requirement.
My point of difference, then, though crucial to the outcome of this case, is a narrow one. I dramatize this difference by posing the question: How can a statute, altered and thus rendered constitutional by this Court's interpretation as of the date of this opinion, be held applicable to this Appellant so as to deny her relief for her earlier noncompliance? *Page 836 
The answer must begin with the source of the problem. The pertinent intestacy statutes are § 43-3-1, Ala. Code 1975, which in pertinent part, reads:
 The real estate of persons dying intestate, as to such estate descends. . . .
(1) To the children of the intestate. . . .
and § 43-3-7, which states:
 Every illegitimate child is considered as the heir of its mother, and inherits her estate in whole or in part, as the case may be, in like manner as if born in lawful wedlock.
The word "children" in § 43-3-1 is interpreted to mean "legitimate children." Williams v. Witherspoon, 171 Ala. 559,55 So. 132 (1911); see, also, Hunt v. United States SteelCorp., 274 Ala. 328, 148 So.2d 618 (1963). Therefore, while illegitimate children of female intestates are provided for, illegitimate, unlike legitimate, children of male intestates are denied inheritance rights under our statutory scheme.
At this point we are clearly within the equal protection prohibition of Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459,52 L.Ed.2d 31 (1977). Our statutory scheme for intestacy succession — permitting a legitimate but not illegitimate child to inherit from his intestate father — results in invidious discrimination on the basis of illegitimacy. This does not mean, however, that the States are not allowed considerable latitude in regulating the standard of proof required of illegitimate children who would inherit from their fathers by intestate succession.
This is the precise issue addressed by the United States Supreme Court in Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518,58 L.Ed.2d 503 (1978). Lalli addressed the equal protection challenge to a New York statute (§ 4-1.2 of New York's Estates, Powers, and Trusts Law), which permits an illegitimate child to inherit ". . . from his father if a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring paternity. . . ." (The statute also provides that the "proceeding [be] instituted during the pregnancy of the mother or within two years from the birth of the child." This latter requirement was not included in Appellant's grounds of constitutional attack, and thus not addressed by the Lalli Court (see footnote 5, 439 U.S. 267,99 S.Ct. 524, 58 L.Ed.2d 510).)
Lalli compared the Illinois statute invalidated in Trimble
with the validated portion of the New York statute:
 "The Illinois statute in Trimble was constitutionally unacceptable because it effected a total statutory disinheritance of children born out of wedlock who were not legitimated by the subsequent marriage of their parents. The reach of the statute was far in excess of its justifiable purposes. Section 4-1.2 does not share this defect. Inheritance is barred only where there has been a failure to secure evidence of paternity during the father's lifetime in the manner prescribed by the State. This is not a requirement that inevitably disqualifies an unnecessarily large number of children born out of wedlock." Lalli 439 U.S. at p. 273, 99 S.Ct. at p. 527, 58 L.Ed.2d at p. 514.
Lalli, in answering affirmatively the question, "whether the discrete procedural demands that § 4-1.2 [to the extent challenged] places on illegitimate children bear an evident and substantial relation to the particular state interests this statute is designed to serve", observed:
 "The primary state goal underlying the challenged aspects of § 4-1.2 is to provide for the just and orderly disposition of property at death."
In the instant case, the trial Court correctly acknowledged the unconstitutionality of our intestate succession statute, but denied Appellant relief, concluding that Trimble should not be applied retroactively. (Appellant's reputed father died before Trimble.)
On appeal, this Court proceeds on the same initial premise of invalidity of our succession statutes and the inadequacy of our two traditionally recognized legitimization procedures. Then, its opinion takes our determination of paternity procedure *Page 837 
statutes (in some respects similar to New York's Lalli statute) and purports to engraft constitutional standards thereon. Finally, concluding that the record supports this Appellant's noncompliance with these standards (i.e., the record shows no offer of proof of an adjudication of paternity under § 26-12-1, et seq.), the opinion affirms the trial Court's rejection of Appellant's claim.
I reemphasize that my dissent does not concern itself with the engrafting of valid guidelines on an otherwise unconstitutional statute, even to the extent of broadening the statute's historic purpose. This approach, in my opinion, is entirely proper in light of Trimble and Lalli, and because of the equal protection mandate of our State Constitution.
My point of disagreement is two-fold:
1) The standards engrafted into § 26-12-1 fall short of the equal protection guarantees of both the State and United States Constitutions. While abstract "fairness" of a State law is not the focus of equal protection scrutiny, the statute's relation to the State interests it is intended to promote should not be so tenuous as to lack the rationality contemplated by the equal protection mandate of our Constitutions, State and Federal. In my opinion, the "within two years of the birth of the child" requirement does not meet the latter test. Likewise, the restrictions that the proceedings be instituted in the name of the State and prosecuted by the District Attorney serve no legitimate (no pun intended) State interest. In contrast, the "within the lifetime of the father" requirement is directly and rationally related to the proof of legitimacy as it in turn relates to the orderly procedure for the disposition of intestate estates; and
2) My second point of disagreement, though perhaps of lesser importance in the total development of this area of the law, is of even greater importance than the first point as it relates to the application and disposition of the instant appeal. I came away from our Court's original discussions of this case recognizing my inability to articulate the reasons for my disagreement with the ultimate holding of the opinion to affirm the judgment of the trial Court. Apparently, I left the erroneous impression that I felt the judgment appealed from should be reversed in order to allow Appellant further opportunity to prove an adjudication of paternity as provided under § 26-12-1, et seq. Because of this misunderstanding, I am constrained to "go at it" another way.
It is inescapable it seems to me, that this opinion's affirmance of the trial Court's rejection of Appellant's claim is based necessarily on one of two theories:
1) Either this Court is saying that inherent in our paternity statute from its inception (the old Bastardy Act codified in Tit. 27, Chapter 2A, Code of Alabama 1940 (Recomp. 1958); and Tit. 6, Code of Alabama 1940) is this third method of proof of legitimacy for intestate succession purposes, and this Appellant loses because of her noncompliance therewith (coupled with lack of proof of compliance with either of the other two); or
2) Acknowledging the statute's original constitutional infirmity, we now engraft constitutional standards into the statute and hold them applicable to this Appellant. Having failed to show compliance with these standards, as of this date engrafted into the statutory scheme, she loses.
Although the opinion itself gives no express hint as to which of these optional theories its affirmance is based upon, I suggest that option number 1 should be dismissed summarily. Indeed, I included this option because it is the only possible basis for affirmance other than the theory contained in option number 2. For the opinion to even imply (or for others to infer from the opinion) that our paternity statute, or its ancestry, has ever been considered as having any purpose beyond its "dependency" scope would be nothing short of impugning the integrity of this Court. No one in his right mind would do this, much less the Court itself.
So, we turn to option number 2. Necessarily, then, the Court is saying this Appellant should have anticipated that sometime *Page 838 
in the future this determination of paternity proceeding would be judicially enlarged to include within its scope and purpose the means of proof of legitimacy for purposes of intestacy succession. Stated another way, the burden was upon her not to rely upon prior judicial interpretation of the legitimation statutes (§§ 26-11-1, 2); and she bore the burden of not anticipating that this Court, given the appropriate circumstances, would not construe this determination of the paternity statute in such manner as to broaden its scope and purpose to permit illegitimates to inherit if proof of paternity were established in accordance with this statute. (The opinion cites no authority for such an ex post facto
application for this broadened standard of proof to the present case; and I suggest for good reason — there isn't any.)
The difficulty is intensified because, unlike the challenged New York statute in Lalli, our paternity statute is not an inheritance statute. Section 4-1.2 (2) of the New York Code begins with the language, "An illegitimate child is the legitimate child of his father so that he and his issue inherit from his father if a court of competent jurisdiction has. . . ." That this New York statute, if constitutionally sound, had binding effect upon the illegitimate claimant in Lalli is unquestioned.
Here, our paternity statute, before the date of this opinion, had no application to intestate succession because it is not an inheritance statute. It does not by its terms, nor by judicial construction, legitimate illegitimate children, nor does it permit illegitimate children to inherit from their fathers. Nonetheless, acknowledging the posture of our present law, this opinion 1) rectifies the old "children" means "legitimate children" status of our inheritance statute; 2) broadens the determination of paternity statute to provide what it perceives as a constitutionally valid standard of proof as a condition precedent to an illegitimate's right of intestacy succession to the father's estate; and 3) affirms the trial Court's denial of Appellant's claim because of her noncompliance with this newly-fashioned standard of proof.
I summarize my dissent:
1) Section 26-12-1, et seq. (which is left intact by this Court's opinion as to each of its essential elements), is overly restrictive to the exclusion of significant numbers of illegitimates, which restrictions bear no rational relation to the State's legitimate interests served thereby; and
2) A standard of proof of paternity for purposes of meeting the definition of "child" cannot be fashioned as of the date of this decision and at the same time hold this claimant to the burden of prior compliance with such standards.
I would modify the paternity statute (as it relates to the specific burden of proof in issue) by eliminating the "two years after birth," the "instituted in the name of the State," and the "prosecuted by the district attorney" requirements. This would mean that an illegitimate child could inherit from his father and mother to the same extent and to the same degree as a legitimate child if 1) its illegitimate status were changed to that of a legitimate child by virtue of compliance with §§ 26-11-1, 2; or 2) if a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring the claimant's paternity. (I would, of course, leave this statute unaltered with respect to its utilization for traditional purposes of dependency (i.e., for adjudication of paternity for purposes of the reputed father's obligation for the care, maintenance, and education of the child).)
I would then apply this holding prospectively; that is, I would apply the requirement of this standard of proof to all cases in which the reputed father's death occurred subsequent to the date of this opinion; and I would reverse the instant judgment and remand this case for a further hearing on the issue of paternity.
FAULKNER, J., concurs. *Page 839