This case involves several construction contracts between the City of Birmingham and Business Realty Investment Company ("BRIC").
BRIC is a general contractor. In 1989 and 1990, the City entered into contracts with BRIC by which BRIC was to build several street connectors and sidewalks for the City. United States Fidelity Guaranty Company ("USFG") was BRIC's bonding company. USFG provided the bond on the contracts between BRIC and the City. *Page 749 
On January 16, 1992, USFG sued BRIC and its president, Rick Bentley, seeking to be exonerated of liability under certain surety bonds it had issued in favor of the City, specifically, liability based on the City's claim that BRIC was in default on one of its contracts (the 24th Street project) and the City's demand that USFG complete the contract. On August 21, 1992, USFG filed a motion for summary judgment. The trial court granted the motion as to amounts USFG actually had paid to the City.
Subsequently, BRIC and Bentley filed a third-party complaint against the City. In their complaint, they alleged that the City had breached five separate construction contracts it had entered into with BRIC. Specifically, those contracts involved the following projects: (1) the 24th Street project; (2) the 11th Avenue project; (3) the 36th Avenue project; (4) the 10th Jersey Street project; and (5) the Ensley Sidewalk Phase II project. BRIC further alleged, with regard to the 24th Street project, that the City had breached an implied warranty with respect to plans, layout stakes, and instructions; that it had negligently supervised the project; and that it had negligently designed and maintained a sewer drainage system that flooded adjoining property owned by BRIC. BRIC also alleged that the City had intentionally interfered with its business relationship with USFG. The City generally denied all the allegations and asserted no affirmative defenses.
A jury returned verdicts in favor of BRIC on all five of its breach-of-contract claims, totalling $80,391.69.
The jury also found in favor of BRIC on its claim alleging intentional interference with business relations, awarding damages of $172,500. As to BRIC's claim alleging a breach of implied warranty on the 24th Street project, the jury awarded $48,763.89 in damages to BRIC. The jury also awarded $48,763.89 on BRIC's claim alleging negligent supervision of the 24th Street project. It found in favor of the City on the negligent-design claim related to the 24th Street project. (C.R.806-11.)
The trial court awarded BRIC an additur of $97,527.78 (the amount of USFG's verdict against BRIC), because the jury failed to include this in its award for the breach of contract on the 24th Street project. The City refused to accept the additur and the trial court ordered a new trial on the implied warranty issue.
The City appealed. It argues that the trial court erred in submitting the intentional-interference-with-business-relations claim to the jury, based on § 11-17-190, Ala. Code 1975. The City argues, in the alternative, that if it is liable, it cannot be liable for more than $100,000 in damages on the intentional-interference claim. The City also argues that the breach-of-implied-warranty and negligent-supervision claims are irreconcilably inconsistent. Last, the City argues that the trial court erred in awarding the additur on the breach-of-contract claim based on the 24th Street contract. On cross-appeal, BRIC and Bentley argue that the trial court erred in limiting Bentley's testimony concerning the damage to BRIC's property adjoining the 24th Street project.
Section 11-47-190 provides:
 "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways or buildings after the same had been called to the attention of the council or other governing body or after the same had existed for such an unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council or other governing body and whenever the city or town shall be made liable for damages by reason of the unauthorized or wrongful acts or negligence, carelessness or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured. However, no recovery may be had under any judgment *Page 750 
or combination of judgments, whether direct or by way of indemnity under Section 11-47-24, or otherwise, arising out of a single occurrence, against a municipality, and/or any officer or officers, or employee or employees, or agents thereof, in excess of a total $100,000 per injured person up to a maximum of $300,000 per single occurrence, the limits set out in the provisions of Section 11-93-2 notwithstanding."
The City argues that it cannot be held liable for intentional interference with business relations because § 11-47-190
limits the liability of municipalities to liability for injuries suffered through "neglect, carelessness or unskillfulness." In Scott v. City of Mountain Brook,602 So.2d 893, 894-95 (Ala. 1992), we held that "the terms `neglect,' carelessness,' and `unskillfulness,' given their plain meanings, [did not] encompass intentional interference with a business relationship" and that the municipal defendant, therefore, was immune from the claim.
The issue here is whether the City waived its right to use immunity as a defense by failing to raise it in its pleadings or at trial. Rule 8(c), Ala.R.Civ.P., provides that a party must set forth affirmatively any "matter constituting an avoidance or affirmative defense." An "affirmative defense" is defined as a "matter asserted by [the] defendant which, assuming the complaint to be true, constitutes a defense to it." Black's Law Dictionary (6th ed. 1990).
In Bechtel v. Crown Central Petroleum Corp.,451 So.2d 793 (Ala. 1984), we held that an employer's immunity provided by the Workers' Compensation Act is an affirmative defense and is subject to the pleading requirements of Rule 8(c). BRIC argues that the municipal immunity provided by § 11-47-190 is an affirmative defense that must be specifically pleaded. InBechtel, the trial court entered a summary judgment based on the affirmative defense of statutory employer immunity, a defense that was not raised in the defendant's pleadings. We held that the trial court erred, because the language of Rule 8(c) is mandatory and the defendant had never amended its answer to include the defense.[1]
The Court in Kershaw v. Knox Kershaw, Inc.,523 So.2d 351 (Ala. 1988), held that the defendant's failure to plead the affirmative defense of illegality before post-trial motions were filed precluded a consideration of that defense. In State Department of Revenue v. Price-Williams,594 So.2d 48 (Ala. 1992), we held that the defense of sovereign immunity is an affirmative defense that can be waived if it is not affirmatively pleaded.
Following Bechtel, Kershaw, andPrice-Williams, we conclude that the defense of statutory municipal immunity is an affirmative defense that, under Rule 8(c), must be specifically pleaded. Although statutory municipal immunity, like the statutory employer immunity provided by the Workers' Compensation Act and like sovereign immunity, is not specifically listed in Rule 8(c), it quite obviously is of the same nature as those defenses specifically listed there. We must now determine if the City ever raised the defense.
The City did not in its answer plead immunity as a defense. The City never amended its answer to include the affirmative defense of immunity. More than two years after the action was filed, the trial court entered a pretrial order stating that "the filing of any further claims, including counterclaims, crossclaims, third-party claims, amended answers and amended or additional defenses is barred." (C.R.505.) The trial court also ordered that "each attorney was to bring a short written summary of the claims and causes of action and the position of the party such attorney represents." (C.R.506.) In response to this, the City stated *Page 751 
that it denied having "intentionally, willfully, or maliciously interfered" with BRIC's business relationship with USFG. (C.R. 511.) The City never raised the defense of statutory immunity under § 11-47-190. Moreover, the City did not move for a judgment as a matter of law, either at the close of BRIC's case or at the close of all the evidence, and it did not object when the trial court submitted the intentional-interference claim to the jury.[2] The City did file a postverdict motion for a judgment as a matter of law or, in the alternative, a new trial; in that motion, it asserted that "Alabama law prevents any recovery of damages from municipalities on claims of intentional interference with business relations." (C.R.793.)
The City, like any other defendant, must follow the procedural rules. Because the City did not properly raise the defense of immunity, the court properly allowed the claim of intentional interference with business relations to go to the jury. Certainly, matters that could have been foreseen earlier should not be asserted for the first time after trial. A fair trial demands that both parties and the court have the opportunity to address questions of liability and defensive matters in a timely manner. The City had every opportunity to raise the defense of immunity and failed to do so. Consequently, any immunity defense under the Act that might have been asserted with regard to the intentional-interference-with-business-relations claim has been waived.
Now we must address whether the City is limited to $100,000 in damages under § 11-93-2, which provides as follows:
 "The recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for bodily injury or death for one person in any single occurrence. Recovery of damages under any judgment or judgments against a governmental entity shall be limited to $300,000.00 in the aggregate where more than two persons have claims or judgments on account of bodily injury or death arising out of any single occurrence. Recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for damage or loss of property arising out of any single occurrence. No governmental entity shall settle or compromise any claim for bodily injury, death or property damage in excess of the amounts hereinabove set forth."
In Macon v. Huntsville Utilities, 613 So.2d 318
(Ala. 1992), a municipal employee sued his former employer, Huntsville Utilities, alleging wrongful termination. The jury awarded the employee $228,658.27. The trial court reduced the award to $100,000 based on § 11-93-2. We reversed, holding that the $100,000 cap did not apply to the amount of damages recoverable against a governmental entity for wrongful termination:
 "What judgments against a `governmental entity' are subject to the statutory cap? Clearly, judgments that authorize `[t]he recovery of damages . . . for bodily injury or death for one person in any single occurrence' are subject to the statutory cap. The judgment here is not such a judgment. Judgments that authorize the `[r]ecovery of damages . . . for . . . loss of property arising out of any single occurrence' are also subject to the statutory cap. Ala. Code 1975, § 11-93-2. Is this a judgment that authorizes the recovery of damages for `loss of property'?
 "Hunstville Utilities claims that the legislature's intent in passing the statute setting a cap on damages was to limit judgments against governmental entities and that a decision in favor of the workman here would frustrate the purpose of the statute. It argues that because § 25-5-11.1 (the wrongful discharge statute) was passed after § 11-93-2 (the statutory cap statute), the legislature, had it intended for wrongful discharge to be excluded from the confines of § 11-93-2, would have excluded such judgments from the operation of the statutory cap statute. Huntsville Utilities quotes the following from McClain v. Birmingham Coca-Cola Bottling Co., 578 So.2d 1299, 1301 (Ala. 1991), in support of its argument: *Page 752 
 " `[A] literal interpretation of a statute will not be blindly adopted when it would defeat the purpose of the statute, if any other reasonable construction can be given to the language in . . . dispute.'"
 "Huntsville Utilities claims that if we adopt a literal, strict interpretation of § 11-93-2 that excludes actions for wrongful discharge from its provisions we would be contravening the principle set forth in McClain and defeating the entire purpose of the statute. We think otherwise.
 "The State of Alabama does not preserve committee reports, or the debates that surround the adoption of legislation; so, we are unable to review the legislative history of the statute, but `[w]hen [a] statutory pronouncement is clear and not susceptible to a different interpretation, it is the paramount judicial duty of a court to abide by that clear pronouncement.' Parker v. Hilliard, 567 So.2d 1343, 1346 (Ala. 1990). We apply that principle in this case.
 " `Property damage,' as it applies to the subject statutory cap, is defined in § 11-93-1(4) as `[i]njury or destruction to tangible property caused by an occurrence.' Consequently, the only question to be asked is: Was the termination of the workman here an injury to, or destruction of, tangible property? We think not. Although the right to seek lawful employment is a property right, International Union v. Russell, 264 Ala. 456, 88 So.2d 175, 183
(1956), we agree with the workman's argument that the right to seek employment is an intangible property right, rather than a tangible property right, and that the legislature did not intend that an action for wrongful discharge would be subject to the statutory cap provisions of § 11-93-2. . . ."
613 So.2d 318, 319-20 (footnotes omitted).
This Court in Macon went on to define "tangible property" as "corporeal property, that is, `that which may be felt or touched; such property may be seen, weighed, measured, and estimated by the physical senses; that which is visible and corporeal; having substance and body as contrasted with incorporeal property rights.'" 613 So.2d at 322.
Similarly, in this present case, we conclude that damages based on intentional interference with business relations are not subject to the statutory cap of § 11-93-2. BRIC's right to conduct a business relationship with USFG, like the right to seek employment, is an intangible property right. Therefore, BRIC is entitled to the entire amount of the jury award for intentional interference with business relations.
The City next argues that BRIC's claims of negligent supervision and breach of implied warranty are irreconcilably inconsistent. However, it offers no authority to support its argument. When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court's duty nor its function to perform an appellant's legal research. Rule 28(a)(5); Spradlin v. Birmingham Airport Authority,613 So.2d 347 (Ala. 1993).
With regard to the City's argument that the trial court erred in granting BRIC's motion for an additur, we conclude, again, that the City has not properly presented that argument in its brief. The City did attach to its brief a copy of its motion in opposition to BRIC's motion, which the City filed in the trial court. However, the City did not include in that motion in opposition any evidence indicating that BRIC is not entitled to the additur. Where damages are determined to be inadequate, the court may, in lieu of a new trial and with the consent of the defendant, increase the damages, where the amount to be added is certain. Norman v. Baldwin County, 652 So.2d 1145
(Ala. 1994). Here, the additur was based on the amount awarded USFG against BRIC, which in turn prompted BRIC's third-party complaint against the City. At trial, the jury found that this breach of contract, which had caused USFG to pay on the bond, was the City's fault. The City's brief contains nothing to contradict this amount other than its bare assertion that the jury "obviously included" that amount in its other awards to BRIC. (City's reply brief.)
We find no error in the trial court's exclusion of Bentley's testimony, offered as that of *Page 753 
an expert, as to the damage to BRIC's property.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
HOOPER, C.J., and MADDOX, HOUSTON, and LYONS, JJ., concur.
ALMON and SEE, JJ., concur in the result.
[1] On remand, the trial court allowed the defendant inBechtel to amend its answer to assert the affirmative defense of employer immunity. The trial court then entered another summary judgment for the defendant, and the plaintiff again appealed. We concluded that the trial court did not err in allowing the amendment, holding that it was in the court's discretion to do so, under Rule 15, Ala.R.Civ.P.Bechtel v. Crown Central Petroleum Corp.,495 So.2d 1052 (Ala. 1986). In this present case, however, the City never amended its complaint to include the affirmative defense of statutory immunity.
[2] Under Rule 50, Ala.R.Civ.P., a party must make a preverdict motion for a judgment as a matter of law in order to be entitled later to a postverdict judgment as a matter of law.