The defendants Ed Richardson, in his individual capacity and as superintendent of the Alabama Department of Education ("the State Superintendent"); the Alabama Department of Education; Wayland Blake, in his individual capacity and as the chief financial officer of the Bessemer School System ("the chief financial officer"); Marvin Taylor, Sr., in his individual capacity and as a financial officer of the Bessemer School System; Marvin Taylor, Jr., in his individual capacity and as a financial officer of the Bessemer School System; Michael Taylor, in his individual capacity and as a financial officer of the Bessemer School System; Alan Stevens, in his individual capacity and as the chief administrative officer of the Bessemer School System; and the Bessemer Board of Education ("the Bessemer Board") appeal summary judgments for the plaintiffs Karen Terry, Tarus Lyons, Maggie McCall, Jerry Dismuke, and Yohance Prioleau. We affirm in part, reverse in part, and remand the case to the trial court for further proceedings consistent with this opinion.
 Facts
In March 2000, the Bessemer Board requested that the State Board of Education assume control over the finances of the Bessemer Board. The State Board of Education authorized the State Superintendent to appoint a chief financial officer for the Bessemer School System under § 16-6B-4, Ala. Code 1975, and the State Superintendent appointed Blake to that position.
At a regularly scheduled meeting of the Bessemer Board on May 15, 2001, the following occurred:
"[The State Superintendent]: . . .
 "I asked Mr. Russell[, the interim superintendent of the Bessemer School System,] this morning if he would be prepared to make these recommendations that lie before you at this time. Mr. Russell's position, and I think in fairness to him not having adequate chance to review those, was that he would prefer not. Is that still your position, Mr. Russell?
"Mr. Russell: Correct.
 "[The State Superintendent]: Ok. Since he is not in a position to make the personnel recommendations, what I'd like to do is ask Mr. Blake, our chief financial officer, to come forward and to simply call to your attention the names that lie before you without calling the names, of course, that let you know that those are some actions to be taken. We will notify those individuals this afternoon *Page 279 
or tomorrow, at least it will get out, and then after that notification has been completed, we would be in a position, then, to release those.
 "[The chief financial officer]: Thank you, Dr. Richardson. Now, before you are the recommendations regarding both the transfers of certain staff who are in the Bessemer city schools and the non-renewal of certain staff. I recommend at this time that you approve the personnel report as amended that you have before you."
The Bessemer Board then voted to approve the recommended personnel changes. These recommended changes consisted of transferring James Jones, Terry, and Lyons, who were tenured teachers, and non-renewing Dismuke, McCall, and Prioleau, who were nontenured teachers. The tenured teachers were notified that the Bessemer Board had voted to transfer them, and the nontenured teachers were notified that the Bessemer Board had voted to non-renew them.
Jones and Terry then contested their putative transfers in accordance with § 16-24-6, Ala. Code 1975, by filing a written demand for a hearing before the Bessemer Board.[1] At the hearing convened by the Bessemer Board on the contests filed by Jones and Terry, counsel for Jones and Terry informed the Bessemer Board that Jones and Terry intended to sue the Bessemer Board for a judgment declaring that the putative transfers of Jones and Terry were void because the local superintendent had not recommended the transfers as required by § 16-24-5, Ala. Code 1975. The Bessemer Board then voted to suspend the hearing pending that judicial determination.
Thereafter, Jones, Terry, Lyons, Dismuke, McCall, and Prioleau sued the defendants on the theory that these putative employment actions were unlawful.[2] The tenured teachers claimed that they could not be validly transferred without the transfer being recommended by the superintendent of the Bessemer School System because § 16-24-5, Ala. Code 1975, provides that school boards can transfer tenured teachers only upon the recommendation of the local superintendent. The nontenured teachers claimed that they could not be validly non-renewed without the non-renewals being recommended by the Bessemer superintendent because the Bessemer Board had customarily non-renewed nontenured teachers only upon the recommendation of the Bessemer superintendent. The nontenured teachers asserted that this custom constituted a "policy" of the Bessemer Board and that the deviation from this custom by the Bessemer Board constituted a violation of the requirement of §16-1-30, Ala. Code 1975, that amendments to certain policies of local boards of education be made only after first consulting with the professional organization of the school employees.
Jones, Terry, Lyons, Dismuke, McCall, and Prioleau moved for summary judgments on their claims of unlawful employment action, and the defendants cross-moved for summary judgments on those claims. As grounds for their cross-motions *Page 280 
for summary judgments, the defendants asserted that (1) the putative transfers of the tenured teachers were valid because §16-6B-4 authorizes a chief financial officer appointed by the State Superintendent to recommend transfers of tenured teachers, (2) the putative transfers of the tenured teachers were valid because the tenured teachers' failure to appeal their transfers to the State Tenure Commission in accordance with § 16-24-7, Ala. Code 1975, waived their claims that the transfers were invalid, and (3) the putative non-renewals of the nontenured teachers were valid because § 16-24-12, Ala. Code 1975, the statute governing non-renewal of nontenured teachers, does not require that the local superintendent recommend the non-renewal.
Entering summary judgments for Jones, Terry, Lyons, Dismuke, McCall, and Prioleau on their claims of unlawful employment action[3] and denying summary judgments for the defendants on those claims, the trial court held that both the putative transfers of the tenured teachers and the putative non-renewals of the nontenured teachers were void because they lacked the recommendation of the local superintendent. The trial court held also that the tenured teachers had not waived their claims by failing to appeal the putative transfers to the State Tenure Commission. In holding that the putative transfers of the tenured teachers were void, the trial court reasoned that the local superintendent's recommendation was required for the putative transfers by § 16-24-5. In holding that the tenured teachers had not waived their claims by failing to appeal their transfers to the State Tenure Commission, the trial court reasoned that the Bessemer Board had not made an appealable "decision" within the meaning of § 16-24-7 because the Bessemer Board had suspended the hearing on the contests filed by Jones and Terry before a final "decision" was made on the transfers. In holding that the putative non-renewals of the nontenured teachers were void, the trial court reasoned that the Bessemer superintendent's recommendation was required for the putative non-renewals of the nontenured teachers because the Bessemer Board, by customarily non-renewing nontenured teachers only upon the recommendation of the Bessemer superintendent, had adopted a policy that could not be amended without consulting with the professional organization of the nontenured teachers in accordance with § 16-1-30. The trial court made the summary judgments for Jones,[4] Terry, Lyons, Dismuke, McCall, and Prioleau on their claims of unlawful employment action final judgments in accordance with Rule 54(b), Ala. R. Civ. P.
 Issues
This appeal raises these issues: (1) whether § 16-24-5 allowed the transfers of the tenured teachers without the recommendation of the local superintendent but upon the recommendation of the chief financial officer appointed by the State Superintendent pursuant to § 16-6B-4 (2) *Page 281 
whether the tenured teachers waived their claims that their transfers were invalid by failing to appeal to the State Tenure Commission in accordance with § 16-24-7, and (3) whether §16-1-30(b) required that the Bessemer Board consult with the professional organization of the nontenured teachers before it deviated from the custom of non-renewing nontenured teachers only upon the recommendation of the Bessemer superintendent.
Law
 "Summary judgment is appropriate only when `there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala. R. Civ. P., and Dobbs v. Shelby County Econ. Indus. Dev. Auth., 749 So.2d 425 (Ala. 1999). The court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable doubts in favor of the nonmoving party. System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419 (Ala. 1996). `[W]here the evidence is in conflict, the issue must [be tried to the fact-finder].' Kitchens v. Winn-Dixie Montgomery, Inc., 456 So.2d 45, 47
(Ala. 1984). In reviewing a summary judgment, an appellate court, de novo, applies the same standard as the trial court. Dobbs, supra."
Bruce v. Cole, 854 So.2d 47, 54 (Ala. 2003).
The party moving for summary judgment bears "`the burden of production, i.e., the burden of making a prima facie showing that he is entitled to summary judgment.'" Ex parte General MotorsCorp., 769 So.2d 903, 909 (Ala. 1999) (quoting Berner v.Caldwell, 543 So.2d 686, 691 (Ala. 1989) (Houston, J., concurring specially)).
 "`The manner in which the movant's burden of production is met depends upon which party has the burden of proof . . . at trial. If the movant has the burden of proof at trial, the movant must support his motion with credible evidence, using any of the materials specified in Rule 56(c), [Ala.] R. Civ. P. ("pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits"). The movant's proof must be such that he would be entitled to a directed verdict if this evidence was not controverted at trial.'"
General Motors, 769 So.2d at 909 (quoting Berner, 543 So.2d at 691 (Houston, J., concurring specially)). If the movant meets his burden of production by making a prima facie showing that he is entitled to summary judgment, "then the burden shifts to the nonmovant to rebut the prima facie showing of the movant." Lucasv. Alfa Mut. Ins. Co., 622 So.2d 907, 909 (Ala. 1993).
 "In order to rebut such a prima facie showing, the nonmovant must show `substantial evidence' that creates a genuine issue of material fact. Substantial evidence is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Id.
Waiver is an affirmative defense. See Rule 8(c), Ala. R. Civ. P.
Section 16-24-5 provides:
 "Any teacher on continuing service status, upon recommendation of the superintendent and the approval of the employing board of education, may be transferred for any succeeding year from one position, school or grade to another by being given written notice of such intention to transfer by the employing board; except, that such transfer *Page 282 
shall be without loss of status or violation of contract, and such transfer may not be for political or personal reasons."
(Emphasis added.)
Section 16-24-6 provides, in pertinent part:
 "After receiving notice of the employing board's intention to effect a transfer, the teacher receiving such notice may obtain a hearing before the employing board by filing a written demand for such hearing within 15 days after the receipt of such notice. If the teacher does not file such demand within 15 days after receipt of the notice to transfer, then the transfer shall be final. . . ."
Section 16-24-7 provides, in pertinent part:
 "A teacher on continuing service status shall have the right to appeal within 15 days after the decision of the employing board to the State Tenure Commission, as hereinafter established, to obtain a decision by the commission as to whether such action was in compliance with this chapter and whether such action was taken for political or personal reasons and that such action was not arbitrarily unjust. If said appeal is not taken within 15 days after the decision of the board, the board's decision shall be final. . . . The action of the State Tenure Commission shall be final and conclusive in determining all questions relative to said transfer and shall be based on the record of the proceedings before the said board and the evidence as recorded at such hearing. . . ."
(Emphasis added.)
Section 16-6B-4 provides, in pertinent part:
 "Just as local boards of education may be in need of assistance based on student achievement, they may also be in an unsound fiscal condition. The State Board of Education is directed to require, approve and audit budgets, financial statements, and other reports which may be deemed necessary to assess the financial stability of each local board of education. . . . If after a reasonable period of time the State Superintendent of Education determines that the local board of education is still in an unsound fiscal condition, a request will be made to the State Board of Education for the direct control of the fiscal operation of the local board of education. Upon approval by the State Board of Education, the State Superintendent of Education will appoint an individual to be chief financial officer to manage the fiscal operation of the local board of education. The chief financial officer shall perform his or her duties in accordance with rules and regulations established by the State Board of Education in concert with applicable Alabama law. . . ."
Section 16-4-8 provides:
 "The State Superintendent of Education, under rules and regulations promulgated by the State Board of Education, shall have the authority to review actions and orders of county and city boards of education and of county superintendents of education and city superintendents of schools in matters relating to finance and other matters seriously affecting the educational interest. Upon such review the State Superintendent of Education shall have the power to determine from the facts the just and proper disposition of the matter. The order of the state superintendent shall be binding."
Section 16-4-4 provides, in pertinent part:
 "The State Superintendent of Education shall explain the true intent and meaning of the school laws and of the *Page 283 
rules and regulations of the State Board of Education. He shall decide, without expense to the parties concerned, all controversies and disputes involving the proper administration of the public school system. . . ."
Section 16-3-11 provides, in pertinent part:
 "The State Board of Education shall exercise, through the State Superintendent of Education and his professional assistants, general control and supervision over the public schools of the state. . . ."
Section 16-24-12 provides:
 "Any teacher in the public schools, whether in continuing service status or not, shall be deemed offered reemployment for the succeeding school year at the same salary unless the employing board of education shall cause notice in writing to be given said teacher on or before the last day of the term of the school in which the teacher is employed; and such teacher shall be presumed to have accepted such employment unless he or she shall notify the employing board of education in writing to the contrary on or before the fifteenth day of June. The employing board of education shall not cancel the contract of any teacher in continuing service status, nor cause notice of nonemployment to be given to any teacher whether in continuing service status or not except by a vote of a majority of its members evidenced by the minute entries of said board made prior to or at the time of any such action."
Section 16-1-30(b) provides:
 "(b) The local board of education shall, upon written recommendation of the chief executive officer, determine and establish a written educational policy for the board of education and its employees and shall prescribe rules and regulations for the conduct and management of the schools. Before adopting the written policies, the board shall, directly or indirectly through the chief executive officer, consult with the applicable local employees' professional organization. Input by the applicable professional organization shall be made in writing to the chief executive officer. Representatives of the professional organization shall be made known to the chief executive officer in writing by the professional organization's duly elected officers or their representative. The chief executive officer of the board may also consult with professional assistants, principals, employees, and other interested citizens. The written policies, rules, and regulations, so established, adopted, or promulgated shall be made available to all persons affected and employed by the board. Any amendments to the policies, rules, and regulations shall be developed in the same manner and furnished to the affected persons employed by the board within 20 days after adoption."
In DeKalb County LP Gas Co. v. Suburban Gas, 729 So.2d 270,275-76 (Ala. 1998), this Court stated:
 "In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
 "`"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."'" *Page 284 
In Ex parte E.J.M., 829 So.2d 105, 108-09 (Ala. 2001), this Court stated:
 "`Our cases, without conflict, give emphasis to the well defined rule that "`"special provisions relating to specific subjects control general provisions relating to general subjects"'"; and "`"when the law descends to particulars, such more special provisions must be understood as exceptions to any general rules laid down to the contrary."'"'"
 Analysis A. Requirement that Local Superintendent Recommend Transfers of Tenured Teachers
The defendants primarily argue that the putative transfers of the tenured teachers were valid because § 16-6B-4 authorizes a chief financial officer appointed by the State Superintendent "to manage the fiscal operation of the local board of education," which, the defendants argue, necessarily would include the authority to recommend transfers of tenured teachers since personnel decisions have a profound effect on the financial condition of a local board. However, § 16-24-5, the statute specifically governing the transfers of tenured teachers, plainly and unambiguously requires transfers of tenured teachers to be recommended by the local superintendent while § 16-6B-4 does not specifically authorize tenured teachers to be transferred upon the recommendation of a chief financial officer appointed by the State Superintendent without the recommendation of the local superintendent. Because § 16-24-5 is plain and unambiguous in requiring that a transfer of a tenured teacher be recommended by the local superintendent and because § 16-24-5 is specific in governing the transfer of tenured teachers while § 16-6B-4 is general in governing the appointment and authority of a chief financial officer, we must give effect to the plain and unambiguous language of § 16-24-5 and hold that the transfers of the tenured teachers, Terry and Lyons, were void because they were not recommended by the local superintendent as required by §16-24-5. DeKalb County LP Gas Co., 729 So.2d at 275-76, and Exparte E.J.M., 829 So.2d at 108-09.
The defendants alternatively argue that §§ 16-4-4, 16-4-8, and16-3-11 confer broad general powers on the State Superintendent to supervise and to control the operation of the public schools and that these broad general powers would necessarily include the authority to recommend the transfer of tenured teachers or to authorize a chief financial officer to recommend the transfer of tenured teachers without the recommendation of the local superintendent. Again, however, § 16-24-5, the statute specifically governing the transfer of tenured teachers, plainly and unambiguously requires transfers of tenured teachers to be recommended by the local superintendent while §§ 16-4-4, 16-4-8, and 16-3-11 do not specifically authorize transfers of tenured teachers to be recommended by the State Superintendent or a chief financial officer instead of the local superintendent. Thus, again, because § 16-24-5 is plain and unambiguous in requiring that a transfer of a tenured teacher be recommended by the local superintendent and because § 16-24-5 is specific in governing the transfer of tenured teachers while §§ 16-4-4, 16-4-8, and 16-3-11
are general in governing the authority of the State Superintendent, we must give effect to the plain and unambiguous language of § 16-24-5 and hold that the transfers of the tenured teachers, Terry and Lyons, were void because they were not recommended by the local superintendent as required by § 16-24-5.DeKalb *Page 285 County LP Gas Co., 729 So.2d at 275-76, and Ex parte E.J.M., 829 So.2d at 108-09.
 B. Waiver of Claims by the Tenured Teachers
The defendants argue that the tenured teachers waived their claims that their putative transfers were invalid because the tenured teachers did not appeal the putative transfers to the State Tenure Commission under § 16-24-7. Because waiver is an affirmative defense, the defendants bore the "the burden of production, i.e., the burden of making a prima facie showing that [they were] entitled to summary judgment" based on this defense.Ex parte General Motors, 769 So.2d at 909 (quoting Berner, 543 So.2d at 691 (Houston, J., concurring specially)). Establishing such a prima facie case required that the defendants first establish that the Bessemer Board had made a "decision" to transfer the tenured teachers because § 16-24-7 provides a right of appeal only from a "decision."
Reading § 16-24-7 in pari materia with §§ 16-24-5 and 16-24-6
reveals that, if a tenured teacher contests a putative transfer by filing a written demand for a hearing with the employing board in accordance with § 16-24-6, the putative transfer does not become an appealable "decision" under § 16-24-7 until the employing board renders a decision on the contest. The undisputed evidence affirmatively established that Terry contested the putative transfer by filing a written demand for a hearing with the Bessemer Board, that the Bessemer Board held a hearing on Terry's contest, and that the Bessemer Board suspended a decision on Terry's contest pending a judicial determination whether the putative transfers were valid. The defendants failed to produce any evidence establishing that Lyons did not contest his putative transfer under § 16-24-6 or that the Bessemer Board did not suspend a decision on such a contest. Thus, the undisputed evidence established that the Bessemer Board had not rendered a "decision" on Terry's putative transfer that was appealable under § 16-24-7, and the defendants did not meet their burden of producing evidence establishing that the Bessemer Board made a "decision" on Lyons's putative transfer that was appealable under § 16-24-7. Accordingly, the trial court properly denied the defendants' summary judgments based on their affirmative defense of waiver.
 C. Requirement that Local Superintendent Recommend Non-Renewals of Nontenured Teachers
The nontenured teachers bore the burden of making a prima facie showing that they were entitled to summary judgments on their claims that their putative non-renewals were invalid because the local superintendent did not recommend them. While § 16-24-12, the statute specifically governing the non-renewal of nontenured teachers, does not require that the local superintendent recommend such non-renewals, the nontenured teachers argue that they met this burden by establishing (1) that the custom of the Bessemer Board of non-renewing nontenured teachers only upon the recommendation of the local superintendent constituted a "policy" of the Bessemer Board within the meaning of § 16-1-30(b); (2) that, under § 16-1-30(b), the Bessemer Board could deviate from this "policy" only if it first amended this practice in consultation with the professional organization of the nontenured teachers; and (3) that the Bessemer Board had not amended this "policy" in accordance *Page 286 
with § 16-1-30(b) before it voted to non-renew the nontenured teachers in violation of this "policy."
Section 16-1-30(b) provides that local boards of education shall "establish a written educational policy for the board of education and its employees and shall prescribe rules and regulations for the conduct and management of the schools"; that, "[b]efore adopting the written policies, the board shall . . . consult with the applicable local employees' professional organization"; that the "written policies, rules, and regulations, so established, adopted, or promulgated shall be made available to all persons affected and employed by the board"; and that "[a]ny amendments to the policies, rules, and regulations shall be developed in the same manner and furnished to the affected persons employed by the board within 20 days after adoption." (Emphasis added.) The only evidence that the nontenured teachers produced that tended to prove that the Bessemer Board had established, adopted, or promulgated a written policy, rule, or regulation that nontenured teachers could be non-renewed only upon the recommendation of the local superintendent was evidence that the Bessemer Board had engaged in an unwritten custom of non-renewing nontenured teachers only upon the recommendation of the local superintendent. This did not constitute substantial evidence of a written policy, rule, or regulation established, adopted, or promulgated in accordance with § 16-1-30(b). Accordingly, the nontenured teachers failed to establish a prima facie case that the Bessemer Board could not deviate from its unwritten custom of non-renewing nontenured teachers only upon the recommendation of the local superintendent without first amending the custom in consultation with the professional organization of the nontenured teachers under §16-1-30(b). Therefore, the trial court erred in entering summary judgments for the nontenured teachers on their claims that their putative non-renewals were invalid.
 Conclusion
We affirm the summary judgments for the tenured teachers, Terry and Lyons. We reverse the summary judgments for the nontenured teachers, Dismuke, McCall, and Prioleau, and remand the case to the trial court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] The record does not disclose whether Lyons contested his putative transfer in this manner.
[2] Jones, Terry, Lyons, Dismuke, McCall, Prioleau and another teacher, Jean Ross, also alleged claims for unpaid pay increases. However, those claims were severed from the unlawful-employment-action claims of Jones, Terry, Lyons, Dismuke, McCall, and Prioleau. Because the summary judgments that are the subject of this appeal adjudicated only the unlawful-employment-action claims, the severed claims for unpaid pay increases are not before us.
[3] The relief granted by the summary judgments for the plaintiffs on their claims of unlawful employment action is against the defendants in their official capacities only. After this appeal was filed, Ed Richardson was appointed interim president of Auburn University. Rule 43, Ala. R.App. P., provides that, "[w]hen a public officer is a party to an appeal . . . in that officer's official capacity, and during its pendency . . . ceases to hold office, . . . the public officer's successor is automatically substituted as a party."
[4] Although the defendants appealed the summary judgment for Jones, Jones and the defendants subsequently filed a stipulation for dismissal, with prejudice, of Jones's claims and thereby rendered the appeal of the summary judgment for Jones moot.