[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 902 
The defendant Joseph Blackmon appeals a summary judgment for the plaintiffs Alma Griffin Brazil and Rebecca Evans. We affirm.[1]
 Facts
In September 2002, the plaintiffs sued Blackmon to quiet title to land owned by the plaintiffs' father, John Griffin ("the elder John"), when he died intestate in 1966. The plaintiffs alleged that they were the only living heirs of the elder John when he died and, therefore, that they were the only persons who inherited his land by intestate succession. The plaintiffs further alleged that, while the elder John had fathered a son named John Griffin, Jr. ("the younger John"), the younger John died unmarried and without issue in 1949, 17 years before the elder John died.
On November 21, 2002, Blackmon counterclaimed for an adjudication of paternity in accordance with § 43-8-48(2)b., Ala. Code 1975, and for an award of a share of the estate of the elder John. Blackmon alleged that he was fathered by the younger John and that he was born out of wedlock to Angie Lee Blackmon Branch on January 16, 1946. Blackmon claimed that, since he was the son of the younger John, who predeceased the elder John, Blackmon was an heir of the elder John under the law of intestate succession. In answering Blackmon's counterclaim, the plaintiffs asserted as an affirmative defense that Blackmon's counterclaims were barred by the applicable statute of limitations.
Blackmon moved the trial court to order DNA testing of the parties, and the plaintiffs opposed that motion. The plaintiffs then moved for a summary judgment on the ground that the application of § 6-2-33(2), Ala. Code 1975, the 10-year statute of limitations applicable to claims by heirs for inheritances, entitled them to judgment as a matter of law not only on Blackmon's counterclaims but also on their quiet-title claims. First, the plaintiffs argued that § 6-2-33(2) barred both Blackmon's counterclaim for an adjudication of paternity in accordance with § 43-8-48(2)b. and his counterclaim for a share of the estate of the elder John. Second, the plaintiffs argued that, since Blackmon was barred by § 6-2-33(2) from claiming an ownership interest in the subject land, the plaintiffs were entitled to judgment as a matter of law on their quiet-title claims.
The plaintiffs supported their summary-judgment motion with their affidavits. The plaintiffs' affidavits stated that the *Page 903 
younger John predeceased the elder John and left neither issue nor a surviving spouse and that thereafter, when the elder John died intestate in 1966, he left the plaintiffs as his sole heirs. The plaintiffs' affidavits stated further that the younger John, during his lifetime, denied that Blackmon was his child.
Blackmon opposed the summary-judgment motion with uncertified photocopies of affidavits by his mother and his aunt that he had previously recorded in the probate court and an unauthenticated copy of a real estate agent's listing contract dated October 2, 2000.[2] The affidavits of Blackmon's mother and aunt stated not only that the younger John had fathered Blackmon, but also that the younger John, during his lifetime, had acknowledged his fatherhood of Blackmon. Blackmon's date of birth, January 16, 1946, was undisputed by the parties. The listing contract, which granted a real estate agent the exclusive right to sell land the elder John owned at his death, named Blackmon as well as the plaintiffs as the sellers of the land.
Blackmon argued that no statute of limitations applied to his counterclaim for an adjudication of paternity. Blackmon also argued that his counterclaim for a share of the elder John's estate was not barred by § 6-2-33(2) because 10 years had not passed since that counterclaim accrued. Blackmon argued that, since he "has claimed to be a co-tenant and has always been treated as such by the [plaintiffs]," his counterclaim did not accrue until the plaintiffs attempted to oust him from the land.
By written order, the trial court stated and held:
 "The facts are undisputed. The plaintiffs are daughters of [the elder John], who died in 1966. The plaintiffs had a brother, [the younger John], who died in 1949. The defendant, Joseph Blackmon, was born out of wedlock to Angie Lee Blackmon [Branch]. The defendant now claims to be the son of [the younger John]. Paternity has not [heretofore] been established. "Code of Alabama [1975, §] 43-8-48[,] allows a child to bring an action to establish paternity for the purposes of inheritance. Code of Alabama [1975, §] 26-17-8[,] provides that the provisions for establishing paternity do not extend the time within which a right of inheritance or succession may be asserted, beyond the time provided by law relating to distribution and closing of decedents estates or to the determination of heirship.
 "Code of Alabama [1975, §] 6-2-33 [(2),] provides a ten-year statute of limitations for recovering hereditaments. Code of Alabama [1975, §] 6-2-8 [(a),] extends the ten-year statute of limitations for minors three years after the minor turns nineteen years of age.
 "The evidence is that the defendant was three years of age when [the younger John] died. The defendant would have reached nineteen years of age in 1965. Reading all these statutes in pari materia, irrespective of the removal of the statute of limitations for establishing paternity, by Alabama case law, the defendant would have had until 1976 to file a claim against the estate of [the elder John]. The defendant never filed a claim until his answer and counterclaim in this case on November 21, 2002. The right *Page 904 
to share in the estate of [the elder John] became time-barred, as a matter of law, ten years after his death in 1966.
 "The counterclaim for paternity is not a proper claim in this case, since the estate of [the younger John] is not a party to this lawsuit. Therefore, the plaintiffs are entitled to judgment as a matter of law on their complaint and the defendant's counterclaim. Summary judgment is granted in favor of the plaintiffs and against the defendant."
In accordance with the order entering a summary judgment for the plaintiffs, the trial court then entered in favor of the plaintiffs a written judgment stating that the plaintiffs were the exclusive owners of fee simple title to the land owned by the elder John at his death. Thereafter, Blackmon filed a Rule 59(e), Ala. R. Civ. P., motion to alter, to amend, or to vacate the summary judgment, and the trial court denied this motion.
 Issues
On appeal, Blackmon raises these issues: (1) whether the trial court erred in implicitly holding that the conflicting evidence regarding whether the younger John was Blackmon's father failed to establish a genuine issue of material fact, (2) whether the trial court erred in holding that Ala. Code 1975, § 6-2-33(2), barred Blackmon's claim to a share of the elder John's estate, (3) whether the trial court erred in holding that Blackmon's paternity claim was not proper since the estate of the younger John was not a party to the lawsuit, and (4) whether the trial court erred in granting the summary-judgment motion without first ordering genetic testing to determine whether the younger John was Blackmon's father. The dispositive issue is whether §6-2-33(2) barred Blackmon's counterclaims.
 Law
Rule 56(c)(3), Ala. R. Civ. P., provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Emphasis added.) In Bruce v. Cole, 854 So.2d 47, 54 (Ala. 2003), this Court stated:
 "Summary judgment is appropriate only when `there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala. R. Civ. P., and Dobbs v. Shelby County Econ. Indus. Dev. Auth., 749 So.2d 425 (Ala. 1999). The court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable doubts in favor of the nonmoving party. System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419 (Ala. 1996). `[W]here the evidence is in conflict, the issue must [be tried to the fact-finder].' Kitchens v. Winn-Dixie Montgomery, Inc., 456 So.2d 45, 47
(Ala. 1984). In reviewing a summary judgment, an appellate court, de novo, applies the same standard as the trial court. Dobbs, supra."
(Some emphasis added.)
The party moving for summary judgment bears "`the burden of production, i.e., the burden of making a prima facie showing that he is entitled to summary judgment.'" Ex parte General MotorsCorp., 769 So.2d 903, 909 (Ala. 1999) (quoting Berner v.Caldwell, 543 So.2d 686, 691 (Ala. 1989) (Houston, J., concurring specially)).
 "`The manner in which the movant's burden of production is met depends *Page 905 
upon which party has the burden of proof . . . at trial. If the movant has the burden of proof at trial, the movant must support his motion with credible evidence, using any of the materials specified in Rule 56(c), [Ala.] R. Civ. P. ("pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits"). The movant's proof must be such that he would be entitled to a directed verdict if this evidence was not controverted at trial.'"
Ex parte General Motors, 769 So.2d at 909 (quoting Berner, 543 So.2d at 691 (Houston, J., concurring specially)).
 "`[T]his Court "will affirm the judgment appealed from if supported on any valid legal ground."' Smith v. Equifax Servs., Inc., 537 So.2d 463, 465
(Ala. 1988) (citation omitted). This rule is qualified only by exceptions not applicable to the case now before us. See Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., 881 So.2d 1013, 1020 (Ala. 2003)."
Kingvision Pay-Per-View, Ltd. v. Ayers, 886 So.2d 45, 51 (Ala. 2003) (emphasis added). Accord Hollis v. City of Brighton,885 So.2d 135 (Ala. 2004); McKenzie v. Killian, 887 So.2d 861 (Ala. 2004); and Ex parte McCord-Baugh, 894 So.2d 679 (Ala. 2004). On the other hand, this Court "can consider an argument against
the validity of a summary judgment only to the extent that the record on appeal contains material from the trial court record presenting that argument to the trial court before or at the time of submission of the motion for summary judgment." Ex parteRyals, 773 So.2d 1011, 1013 (Ala. 2000) (citing Andrews v.Merritt Oil Co., 612 So.2d 409 (Ala. 1992)). That is, "on an appeal from a summary judgment, this Court cannot hold the trial court in error on the basis of arguments made for the first time on appeal." Ex parte Elba Gen. Hosp. Nursing Home, Inc.,828 So.2d 308, 312 (Ala. 2001).
 "`When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court's duty nor its function to perform an appellant's legal research. Rule 28(a)(5) [now Rule 28(a)(10), Ala. R.App. P.]; Spradlin v. Birmingham Airport Authority, 613 So.2d 347 (Ala. 1993).'"
Whited v. Holmes, 816 So.2d 20, 26 (Ala. 2001) (quoting Cityof Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752
(Ala. 1998)).
In pertinent part, § 43-8-42, Ala. Code 1975, provides:
 "[T]he entire intestate estate if there is no surviving spouse passes as follows:
 "(1) To the issue of the decedent; if they are all of the same degree of kinship to the decedent they take equally, but if of unequal degree, then those of more remote degree take by representation. . . ."
In Stone v. Gulf American Fire Casualty Co., 554 So.2d 346,363-67 (Ala. 1989), this Court described the evolution of the law governing the right of a child born out of wedlock to inherit through intestate succession:
 "The law concerning the right of an illegitimate child to inherit through intestate succession has seen many changes over the years. At common law, an illegitimate child, who had not been legitimated, was considered the child of no one and could inherit from no one. See Williams v. Witherspoon, 171 Ala. 559, 55 So. 132 (1911). . . .
 "By 1929, in the case of Moore v. Terry, 220 Ala. 47, 124 So. 80 (1929), overruled in part by Everage v. Gibson, [372 So.2d 829 (Ala. 1979)], this Court *Page 906 
had recognized that an illegitimate child, who had not been legitimated, could inherit from his mother, but not from his father, even if paternity was shown. This change was also reflected in Code 1940, Tit. 16, § 6. . . . Later, in Hudson v. Reed, 259 Ala. 340, 66 So.2d 909 (1953), this Court . . . held that an illegitimate child, because of this statute, could inherit not only from his mother but also through
his mother.
 "Between 1929 and 1979, however, the law in Alabama recognized only the following two methods by which an illegitimate child could be legitimated in order to inherit from the father through intestate succession: 1) by marriage of the parents, accompanied by the father's recognition of the child; or 2) by a written declaration, attested by two witnesses, and filed with the judge of probate. See Moore [v. Terry], 220 Ala. 47, 124 So. 80 (1929); see also Code 1923, §§ 9299, 9300, later codified at Code 1940, Tit. 27, §§ 10, 11, and Code 1975, §§ 26-11-1, 26-11-2.
". . . .
 ". . . [I]n 1979, this Court, in the case of Everage v. Gibson, 372 So.2d 829 (Ala. 1979), cert. denied, 445 U.S. 931, 100 S.Ct. 1322, 63 L.Ed.2d 765 (1980), in order to avoid finding Alabama's statutory scheme for intestate succession unconstitutional, construed it to include a third method of legitimation, i.e., a judicial determination of paternity made within two years of birth and during the father's lifetime. The Everage Court gleaned this third method from the child support statutes found at Code 1975, § 26-12-1
et seq. In 1982, the Alabama legislature superseded Everage and wrote this procedure into the Probate Code itself, in § 43-8-48, which provides that an illegitimate child is considered to be the child of the father if the parents marry or if the paternity is established by an adjudication before the death of the father or thereafter by clear and convincing proof. . . ."
(Footnote omitted.)
Section 26-17-8(c), Ala. Code 1975, a section of the Alabama Uniform Parentage Act, provides:
 "(c) The provisions of this section and Section 26-17-6 do not extend the time within which a right of inheritance or a right to a succession may be asserted beyond the time provided by law relating to distribution and closing of decedent's estates or to the determination of heirship, or otherwise."
In Free v. Free, 507 So.2d 930 (Ala.Civ.App. 1986), the Court of Civil Appeals construed the language in § 43-8-48(2)b. providing for the establishment of paternity by clear and convincing proof after the putative father's death. The Court of Civil Appeals explained and held:
 "There is no statute of limitations attached to [the provision in § 43-8-48(2)(b) for establishing proof of paternity by clear and convincing proof after the putative father's death]. The committee comment takes note of that fact. However, when considered in light of the general statutes applicable to determination of heirship, distribution and closing of decedent's estates, there are already limitations upon establishing paternity after the death of the father. The Alabama Uniform Parentage Act, § 26-17-8(c), specifically provides that it does `not extend the time within which a right of inheritance or a right to a succession may be asserted beyond the time provided by law. . . .'
 ". . . To summarize our holding, by authority of § 43-8-48(2)(b), we hold that paternity may be established after the death of the father upon clear and convincing proof. The action to establish *Page 907 paternity may be brought within the time allowed by law to establish rights of inheritance in any case." 507 So.2d at 932-33 (emphasis added).
In pertinent part, § 6-2-33(2), Ala. Code 1975, provides:
"The following must be commenced within 10 years:
". . . .
 "(2) Actions for the recovery of . . . hereditaments, or the possession thereof. . . ."
In pertinent part, Black's Law Dictionary (8th ed. 2004) defines "hereditament" as "[a]ny property that can be inherited; anything that passes by intestacy."
 "`In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
 "`"`Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'"'"
Richardson v. Terry, 893 So.2d 277, 283 (Ala. 2004) (quotingDeKalb County LP Gas Co. v. Suburban Gas, 729 So.2d 270, 275-76
(Ala. 1998)). "`When ascertaining legislative intent, statutes which are in pari materia . . . must be interpreted as a whole in light of the general purpose of the statute.'" Ex parteBerryhill, 801 So.2d 7, 10 (Ala. 2001) (quoting Kirkland v.State, 529 So.2d 1036, 1038 (Ala.Crim.App. 1988)).
 Analysis
On appeal, Blackmon argues three grounds for reversing the holding by the trial court that the 10-year statute of limitations contained in § 6-2-33(2) barred his counterclaim for a share of the elder John's estate. First, Blackmon argues that, since § 43-2-830, Ala. Code 1975, provides that the real property of a decedent who dies intestate devolves to the heirs of such a decedent upon the decedent's death, Blackmon's interest in the estate of the elder John vested upon his death. However, Blackmon makes this argument for the first time on appeal. This Court cannot, on the basis of an argument made for the first time on appeal, hold that the trial court erred in entering the summary judgment. Ryals and Elba Gen. Hosp., supra.
Second, Blackmon argues that, since he "has been treated and has held himself out as a co-tenant with the [plaintiffs] throughout the years" (Appellant's Brief at page 13), his counterclaim for a share of the elder John's estate did not accrue until the plaintiffs attempted to oust him from the land. However, this argument presupposes that the actions of the plaintiffs in allegedly treating Blackmon as a cotenant and the actions of Blackmon in allegedly holding himself out as a cotenant could vest Blackmon with the ownership interest of a cotenant in the subject land. Blackmon has cited no legal authority supporting that presupposition. This Court need not reverse a judgment on the basis of an argument unsupported by any citation to legal authority. Whited, supra.
Third, Blackmon argues that the holding of the Court of Civil Appeals in Hamilton v. Barwick, 579 So.2d 626 (Ala.Civ.App. 1991), indicates that the trial court erred in holding that §6-2-33(2) applied to his counterclaim for a share of the elder John's estate. However, Hamilton is not apt because in that case the Court of Civil Appeals did not address whether a claim for an inheritance by a child born out of wedlock was subject to § 6-2-33(2). *Page 908 
In Hamilton, the putative father died intestate in 1966. Seeking a sale of the land the putative father had owned at his death and a division of the proceeds, the putative child sued the putative father's other next of kin in 1988. After the defendants contested the putative child's inheritance of an interest in the land owned by the putative father at his death, the trial court adjudged the putative child to be the daughter of the putative father. On appeal, the Court of Civil Appeals held that, while the law in effect when the putative father died in 1966 foreclosed the putative child from establishing her right to inherit from the putative father upon the death of the putative father, the adoption in 1982 of § 43-8-48(2)b., which provided for the establishment of paternity by clear and convincing proof after the death of the putative father, revived her right to an adjudication of paternity. Holding that the adoption of § 43-8-48(2)b. revived the putative child's right to an adjudication of paternity six years before she filed her lawsuit, the Court of Civil Appeals did not address the issue whether her revived right to an adjudication of paternity was subject to the 10-year statute of limitations in § 6-2-33(2). Therefore, Hamilton does not support the position of Blackmon, who waited approximately 20 years after the adoption of § 43-8-48(2)b. to assert his counterclaim for a share of the elder John's estate.
Section 6-2-33(2) expressly provides that it applies to claims for inheritances. It does not exempt the inheritance claims of children born out of wedlock. Therefore, on the basis of the plain language of § 6-2-33(2), we hold that Blackmon's counterclaim for a share of the elder John's estate was subject to the 10-year statute of limitations in § 6-2-33(2). SeeRichardson, 893 So.2d at 283 ("`In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature.'") (quoting DeKalb County LP GasCo., 729 So.2d at 275).
While the trial court reasoned that the 10-year statute of limitations began running upon the death of the elder John in 1966, the trial court failed to consider the state of the law governing the establishment of paternity during the period between the death of the younger John in 1949 and the adoption of § 43-8-48(2)b. in 1982. During that period, the law afforded no means for a child born out of wedlock to establish paternity after the death of the putative father. Stone, supra. Thus, the law afforded Blackmon no means to establish the younger John's paternity from his death in 1949, when Blackmon was three years old, until the adoption of § 43-8-48(2)b. in 1982, long after he had reached the age of majority. Therefore, we hold that the 10-year statute of limitations in § 6-2-33(2) began running on Blackmon's counterclaim for a share of the elder John's estate upon the adoption of § 43-8-48(2)b. in 1982. Because more than 10 years passed between the adoption of § 43-8-48(2)b. in 1982 and the filing of Blackmon's counterclaim for a share of the elder John's estate on November 21, 2002, we hold that Blackmon's counterclaim for a share of the elder John's estate was barred by § 6-2-33(2). While our reasoning regarding the date when the statute of limitations began running differs from the reasoning of the trial court, that difference in reasoning does not preclude our affirming the summary judgment for the plaintiffs on Blackmon's counterclaim for a share of the elder John's estate.See Kingvision Pay-Per-View, supra.
While § 43-8-48(2)b. does not expressly subject a proceeding for an adjudication of paternity by clear and convincing proof to § 6-2-33(2), it likewise does not *Page 909 
expressly exempt such a proceeding from § 6-2-33(2). Moreover, §26-17-8(c) evidences a legislative intent to subject a proceeding for an adjudication of paternity to establish a right of inheritance in a child born out of wedlock to § 6-2-33(2). Free,supra; see Ex parte Berryhill, supra. Therefore, we hold that §6-2-33(2) also applied to Blackmon's counterclaim for an adjudication of paternity under § 43-8-48(2)b. See Free.
Accordingly, since Blackmon did not assert his counterclaim for an adjudication of paternity within 10 years after the adoption of § 43-8-48(2)b. afforded him a right to seek such an adjudication, that counterclaim too was barred by § 6-2-33(2). While we hold that the plaintiffs were entitled to a summary judgment on Blackmon's counterclaim for an adjudication of paternity under § 43-8-48(2)b. on a ground different from the ground cited by the trial court, this Court, subject only to exceptions not applicable in the case now before us, see LibertyNational Life Insurance Co. v. University of Alabama HealthServices Foundation, 881 So.2d 1013 (Ala. 2003), Hollis,McKenzie, and Ex parte McCord-Baugh, supra, will affirm the judgment of the trial court if supported by any valid legal
ground. Kingvision Pay-Per-View, supra.
Because § 6-2-33(2) barred Blackmon's counterclaims, the conflicting evidence regarding whether the younger John was Blackmon's father did not create a genuine issue of material
fact. That is, even if Blackmon truly be the biological son of the younger John, that biological relationship would not entitle Blackmon to judgment on either of his counterclaims, since they are barred by the statute of limitations. Conflicting evidence on an immaterial fact issue will not rebut a summary-judgment movant's prima facie showing that he is entitled to a summary judgment. See Rule 56(c)(3), Bruce, and Ex parte GeneralMotors, supra. Moreover, the barring of Blackmon's counterclaims by § 6-2-33(2) eliminates the issues raised by Blackmon regarding DNA testing and the absence of the estate of the younger John as a party to the lawsuit. Finally, since the barring of Blackmon's counterclaims by § 6-2-33(2) foreclosed Blackmon from establishing that he inherited an ownership interest in the subject land, the plaintiffs were entitled to judgment as a matter of law on their claims to quiet title to the subject land.
 Conclusion
Accordingly, we deny the plaintiffs' motion to dismiss the appeal and affirm the summary judgment for the plaintiffs.
MOTION TO DISMISS APPEAL DENIED; AFFIRMED.
NABERS, C.J., and HOUSTON, LYONS, and WOODALL, JJ., concur.
[1] The plaintiffs-appellees have moved to dismiss the appeal on the ground that the statement of facts in Blackmon's brief includes factual representations unsupported by evidence in the record on appeal. In addition, they have moved to strike the appeal on the ground that it is frivolous. While we deny the motion to dismiss the appeal on both grounds, we have not considered any factual representations in Blackmon's brief that are unsupported by evidence in the record on appeal. Cooper v.Adams, 295 Ala. 58, 61, 322 So.2d 706, 708 (1975) (holding that appellate courts cannot consider matter that is dehors the record on appeal).
[2] Although the plaintiffs argue on appeal that these two affidavits and the listing contract were inadmissible, the plaintiffs did not raise such objections in the trial court. Therefore, the plaintiffs waived their objections to this evidence. See Ex parte Elba Gen. Hosp. Nursing Home, Inc.,828 So.2d 308, 312 (Ala. 2001).